**LOUIE HOY GAY, Appellant,**
v.
**John Foster DULLES, Secretary of State of the United States of America,**
**Appellee.**
No. 15390.

United States Court of Appeals
Ninth Circuit.
Sept. 12, 1957.

---

Banks & Banks, Portland, Or., for appellant.

C. E. Luckey, U. S. Atty., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for appellee.

Before STEPHENS, Chief Judge, and LEMMON and CHAMBERS, Circuit Judges.

LEMMON, Circuit Judge.

While we cannot agree with Mark Twain that "The government's work is always conspicuous for excellence, solidity, thoroughness, neatness",[1] in the instant case, at least, the Federal power has been exerted with justice and with success.

As is pointed out in an article appearing in the Stanford Law Review of May, 1955:[2]

"Before 1940, the citizenship claims of persons outside the United States were adjudicated by the Immigration Service in exclusion proceedings; claimants might test the validity of the proceedings by means of habeas corpus, but they could not get judicial review of the merits of the Service's decision. In 1940 Section 503 of the Nationality Act gave a new remedy."

That remedy, infra, has been unsuccessfully invoked by the appellant in the instant case.

### 1. Statement of the Case

The appellant originally filed his complaint through his alleged father, Louie Foo, in the Court below, asking for a declaratory judgment under Section 503 of the Nationality Act of 1940 (8 U.S. C.A. § 903, Edition of 1942). The complaint was dismissed on motion. When the case was appealed, this Court reversed, with the comment that the appellant and others had "the right to show by amendment or supplemental pleading their authorization of their next friend to apply for travel documents and to initiate the litigation or the right to initiate it themselves, as they may be advised." Joong Tung Yeau v. Dulles (Louie Hoy Gay v. Dulles), 9 Cir., 1955, 225 F.2d 854, 855.

It is worthy of note that the original complaint was filed on December 22, 1952, three days before the effective date of the Immigration and Nationality Act of June 27, 1952 (8 U.S.C.A. §§ 1101–1503; see note, 8 U.S.C.A. page 155 [1953 Edition]). The later act is much more restrictive. For example, as pointed out in the Stanford Law Review article from which we have already quoted, if a certain type of alien "is not within the United States, he is precluded from having his citizenship determined in a declaratory judgment action. Moreover, he is not even eligible to apply for a certificate of identity," etc.[3]

1. Life on the Mississippi, Chapter XXXV.
2. Volume 7, Number 3, page 360.
3. Id., Page 374.

Under the *1940* Act, however, as we shall see, the alien might have instituted such an action "regardless of whether he [was] within the United States or abroad".[4]

It should be noted that the Act of 1952 contains an elaborate saving clause that would specifically make the 1940 Act applicable to the instant case, even though the amended complaint was filed long after the effective date of the 1952 statute.

In the instant case, the appellant filed an amended complaint on January 24, 1956, thus following the suggestion of this Court, *supra*. The amended complaint contained the requisite allegations for this type of action, and concluded in part with the following prayer:

"(1) That an order [be] directed to the [appellee] to issue and grant [appellant] a Certificate of Identity in order that he be eligible to obtain transportation to the United States and be temporarily admitted under bond in the sum of $500.00 for the purpose of prosecuting said claim of Citizenship in this court.

"(2) That a decree be entered herein adjudging said [appellant] to be a National and/or Citizen of the United States."

The appellee filed an Answer denying most of the allegations of the complaint. Oral and documentary evidence was adduced by both parties, and thereafter the District Judge rendered an opinion, filed Findings of Fact and Conclusions of Law, and on October 4, 1956, handed down a judgment, decreeing that the complaint be dismissed. From that judgment the present appeal has been taken.

### 2. *The Applicable Statute*

"Section 503 of the Nationality Act of 1940 (8 U.S.C.A. § 903, 1942 Edition) was as follows:

§ 903. *Judicial proceedings for declaration of United States nationality in event of denial of rights and privileges as national; certificate of identity pending judgment.*

"If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States. If such person is outside the United States and shall have instituted such an action in court, he may, upon submission of a sworn application showing that the claim of nationality presented in such action is made in good faith and has a substantial basis, obtain from a diplomatic or consular officer of the United States in the foreign country in which he is residing a certificate of identity stating that his nationality status is pending before the court, and may be admitted to the United States with such certificate upon the condition that he shall be subject to deportation in case it shall be decided by the court that he is not a national of the United States. Such certificate of identity shall not be denied solely on the ground that such person has lost a status previously had or acquired as a national of the United States; and from any denial of an application for such certificate the applicant shall be entitled to an appeal to the Secretary of State, who, if he approves the denial, shall state in writing the reasons for his decision. The Secretary of State, with approval of the Attorney General, shall prescribe rules and regu-

4. See 8 U.S.C.A. § 903, *infra*, now 8 U.S.C.A. § 1503.

lations for the issuance of certificates of identity as above provided."

3. *The Lower Court's Findings Have Support in the Record.*

(a) *Foo's Fictitious Fatherhood*

■ Louie Foo, hereafter Foo, who gave his age as 72 years and his birthplace as Portland, Oregon, testified that in 1907 he was married to Ng Shee in Hong Me Village, Toishan, Canton, China, and that the appellant was his son by that marriage. He said that he arrived in China in February, 1907, and was married the following month. He could not remember the exact month in which he returned to the United States, but he did testify that it was some time in 1908, and that his son was born on July 5 of that year.

In 1931 Foo went back to China, and lived in the same house with his son, according to his testimony. Between 1908 and 1921, he sent the boy money—"sometimes * * * hundred, sometime two hundred, sometime five hundred for family expense."

A second child, a girl, was born to Foo and his wife while he was in China on a second visit, from 1921 to 1924, he said, adding that after he returned to the United States he continued to send money to his family. Foo has not been back in China since 1924, but has been sending money to his family "every other month, sometime two or three months, sometimes I haven't got no money, I can't send any."

A letter purporting to be from the appellant to Foo, dated October 5, 1929, shows the appellant asking for money from his alleged father. A letter that Foo said was from the appellant, dated February 23, 1941, thanks Foo for the "$100 you sent me."

Foo testified that he sent $3,000 to his wife to repair his house, and a letter that he said was from his wife informed him that his check had been received. The alleged letter from his wife was put into evidence, but was not translated. It was dated July 26, 1952.

The witness identified a photograph alleged to be that of the appellant as that of his son when the latter was 16 or 18 years old.

A blood test made of the appellant in Hong Kong indicated that his blood type was "MN", while that of Ng Shee, described as his "alleged mother", was N. The doctor's written conclusion was as follows:

"Consideration of the above shows that Ng Shee's blood type is compatible with [her?] being the Mother of Louie Hoy Gay. The Father's blood type cannot be N."

A blood test made of the alleged father, Foo, in Portland, Oregon, showed his Type to be "M".

Robert W. Schmeer, 84 years old, a member of the Schmeer Agency and former vice president of the United States National Bank, both presumably of Portland, testified that he had known Foo for nearly 50 years, and that the latter had told him "many times" that he had a wife and boy in China. Elsewhere in his testimony, Schmeer testified that Foo "was going over to see his wife and *sons*".

Robert C. Kneeland, a certified public accountant, said on the stand that he had known Foo for more than 20 years, and had prepared Foo's income tax statements. The witness stated that at least ten years previously Foo had spoken of having a son.

■ The appellee introduced the Immigration File, Exhibit 14, "solely for the purpose of impeachment", according to the District Court's ruling. Such use of that document was proper. In Wong Ken Foon v. Brownell, 9 Cir., 1955, 218 F.2d 444, 446, Judge Stephens said:

"It is legitimate cross-examination to confront a witness with former statements and permit or request him to explain.

"The trial before the District Court was, of course, de novo and not a review of the Immigration hearings and the record shows that

the court considered all of the evidence in that light."[5]

The Immigration File reveals that on two separate occasions Foo swore that he had two sons only, and on one of those occasions he specifically denied having any daughters. Let us examine the record meticulously on this point.

In an "Application for Immigration Visa (Nonquota)", dated Hong Kong, November 3, 1924, Foo listed two sons as being his only children, as follows:

"Louis Hoy Kay [sic], male, Hang Mee Vil., Toy Shan, China
"Louie Hoy Park,       "                               do."

In a statement captioned "Chinese Landed Direct from Steamer on Identification", given at Seattle, Washington, and dated November 30, 1924, it was claimed that he indicated that he had two sons and two daughters, although the record is somewhat ambiguous on this point.

In a sworn statement made December 4, 1924, before Examining Inspector G. H. Mangels of the Immigration Service at Seattle, Foo was asked the following questions and made the following answers:

"Q. When you left this country in August 1921 you stated that you had a wife and one son in China named Louie Hoy Gay, and at the time of your admission here on the 30th of last month you stated that you had another son, Louie Hoy Park, 2 years old. Did you ever have any other children than these two sons? A. No.

"Q. The record appears to show that you claimed to have two girls when you were examined four days ago. Have you any daughters or did you ever have any daughters? A. No. I never mentioned them."

Whatever ambiguity there may exist in Foo's statement captioned "Chinese Landed Direct from Steamer Identification", of November 30, 1924, there is no ambiguity in his replies to questions regarding his children which were asked of him in Hong Kong on November 3, 1924, and in Seattle on December 4, 1923.

On those two latter occasions, Foo emphasized that he had no children other than the two sons, and in his statement of November 3, 1924, he gave their full names and place of residence in China, both sons residing in the same village. Neither the Vice Consul in Hong Kong nor the examining inspector at Seattle, or their respective interpreters, could have "dreamed up" the names, address and the sex of these two alleged children.

But when he was on the witness stand in the Court below and was confronted with the foregoing statements about his two sons, said:

*"No, I got one boy, one daughter. I didn't say that. * * * I all the time say I got one boy and one girl, that is all. Maybe someone make a mistake."*

In other words, in the language of the day, everybody was out of step except Johnny!

A man might make a mistake regarding the layout of the streets in his village, or whether there were one or two mulberry trees in front of his boyhood home; but few men are so absent-minded as to forget the sex of their own children!

Our own careful study of the record and voluminous exhibits has convinced us of the justice of the District Judge's skeptical observation, quoted infra, regarding Foo's testimony.

In his application for a passport, sworn to before the United States Vice Consul at Hong Kong on August 8, 1952, the appellant himself repeatedly stated that he was Foo's son. The District Judge, however, did not believe such evidence, nor was he compelled to do so.

In Ly Shew v. Dulles, 9 Cir., 1954, rehearing and rehearing *en banc* denied,

---

5.  See also Lee Dong Sep v Dulles, 2 Cir, 1955, 220 F2d 264, 265.

1955, 219 F.2d 413, 416, Judge Mathews said:

> "Moon and Ning appeared at the trial and, by their guardian ad litem, Ly Shew, introduced evidence some of which tended to show that Ly Shew was the father of persons known as Ly Moon and Ly Sue Ning and that Moon and Ning were those persons. *Some of the evidence so tending was uncontradicted. However, the District Court, was not required to believe such evidence or to accept it as true.* [Many cases cited.]" [Emphasis supplied.]

Our own independent and meticulous study of the record causes us to concur in the District Judge's statement that he could not "base a finding of citizenship upon testimony of this quality," on the question of the appellant's filiation.

(b) *There Is Rational Basis for the Lower Court's Finding That the Appellant Has Failed to Prove That His Alleged Father Was a Citizen of the United States at the Time of the Appellant's Birth.*

If it be assumed, solely for the sake of the argument, that the appellant has established his filiation with Foo, we must next advance to the question of whether there was substantial basis for the District Court's finding that the appellant has failed to prove by a preponderance of evidence that, at the time of the appellant's birth, Foo himself was a citizen of the United States by birth or naturalization.

The appellant bases his claim to American citizenship upon five documents, which will be considered *seriatim.*

A. *The passport of April 3, 1952*

One of the exhibits in this case is Passport No. 598002, issued to Foo by the Department of State of the United States. Dated April 3, 1952, it expired on April 2, 1954, and was "not valid for travel in any country except Hong Kong".

Conceding, as he must, that "a passport has been held not to be any evidence of citizenship", counsel for the appellant observes that "it seems odd * * * that a passport would even be considered for Louie Foo, in view of the position here taken by the appellee, i. e. that Louie Foo never did submit evidence of his birth in connection with his applications for his two trips to China," and adds:

> "Would the State Department be so free in issuing a passport unless they [sic] believed that Louie Foo was a citizen of the United States as shown by the evidence in this case."

Neither counsel's feelings regarding oddity nor the State Department's "freedom" in granting passports are a substitute in this Court for lawful evidence. We therefore dismiss Point A without further discussion.

B. *The Oregon "Decree for Registration of Birth"*

Foo was born in 1884. Sixty-one years later, on February 8, 1945, the Circuit Court of Multnomah County, Oregon, issued a "Decree for Registration of Birth," finding that Foo was born in Portland, in that County. The appellee concedes that this decree is prima facie evidence of birth.[6] The "Abstract of Supporting Evidence" which is a part of that decree discloses the tenuous basis of fact upon which the State court's *ex parte* pronouncement was bottomed:

> "Testimony of petitioner supporting allegations of Petition and that he is the owner of valuable real estate in Marion and Multnomah Counties in Oregon. Testimony of W. W. Banks, a reliable attorney [counsel in the instant appeal] to the effect that he has a personal acquaintance with and done legal services for petitioner for more than 40 years and that he [sic] has been a merchant during all of the time."

---

6. Section 432.280 of the Oregon Revised Statutes (1955 edition) provides: "A certified copy of such record [of the court, order for the registration of the birth], shall be prima facie evidence in all courts and places of the facts stated therein."

Foo testified regarding a fire that destroyed his store *in 1946,* or a year *after* the Oregon court handed down its decree. Some interesting cross-examination took place in connection with Foo's losses in that fire:

"Q. Mr. Foo, in your testimony about the fire you said you had a trunk in the basement and you had a lot of personal belongings there? A. Yes, sir.

"Q. Or at least you said you had some photographs there. A. Yes.

"Q. Did you have any other evidence besides these photographs of the fact that you were born in this country? A. I got *birth certificate,* photographs, fire burn up in the trunk.

"Q. Did you have any evidence at all of your being born in this country? A. Yes, sir.

"Q. What was that evidence? A. Some paper, *birth certificate,* and photograph; all burned.

"Q. That is the reason it has made it difficult now for you to prove your birth; is that right? A. Yes."

It seems strange that if in 1946 Foo had a birth certificate in his trunk at the time the latter was burned up, he found it necessary *the year before the fire occurred,* to go before the State court and seek a delayed "Decree for Registration of Birth"!

Without further delving into the record, we can say at this point that we fully agree with the learned District Judge in his comment upon the "Abstract of Supporting Evidence" that forms part of the "Decree for Registration of Birth":

"This abstract of supporting evidence clearly indicates the unsatisfactory basis upon which the order was issued."

In Mah Toi v. Brownell, 9 Cir., 1955, 219 F.2d 642, 644, certiorari denied 1955, 350 U.S. 823, 76 S.Ct. 49, 100 L.Ed. 735, we used the following language:

"'Prima facie evidence is a minimum quantity. It is that which is enough to raise a presumption of fact; or, again, it is that which is sufficient, when unrebutted, to establish the fact.' [Case cited.] The evidence supporting the superior court order in this particular case was minimal in quantity and weight. Neither of the two witnesses heard by the court, testifying twenty-two years after the event, was present at the birth or competent under California law to make a certificate thereof.

"Appellant concedes that if the superior court order was not conclusive evidence of the fact of appellant's native birth as a matter of law, its admission in evidence did not shift the burden of proving the fact, but merely required that substantial evidence rebutting the presumption be presented to the court. The final question then is whether there is sufficient evidence in the record to sustain the trial court's finding of fact, it appearing therefrom that the trial court found the presumption rebutted—at least to the extent of evenly balancing the weight of all the credible evidence with no preponderance thereof in favor of appellant."

No useful purpose will be served to labor the point further. Suffice it to say, the dim view taken by the District Court with reference to the decree of the Oregon court was warranted by the record, and is a view that we share.

**C. *The Certificate of Identity***

The appellant placed into evidence a "certificate of identity" issued by the Immigration Official in Charge at Seattle, on November 30, 1924. The appellant's brief comments that "This certificate of identity entitled [the appellant] to remain in the United States and is a

prima facie right of the holder to remain in the United States". Counsel cites three deportation cases in support of his position. But the appellee specifically disclaims any "contest at present pertaining to the right of Louie Foo to remain in the United States," but correctly observes that "The issue is whether Louie Foo was a citizen of the United States at the time of the birth of his alleged son, Louie Hoy Gay".

D. *Foo's Registrations for the Drafts*

Introduced in evidence by the appellant were two registration cards for the military draft for each of the World Wars, issued to Louie Foo. One was dated September 12, 1918, and the other April 26, 1942.

While the appellant lists these registrations in his brief, he makes no effort to point out in what respect they indicate Foo's American citizenship. They have no evidentiary value whatsoever.

As was observed by Judge Chase in United States v. Lamothe, 2 Cir., 1945, 152 F.2d 340, 342, not cited by counsel, "The grant of power in the Constitution to raise and support armed forces is in terms broad enough to include the compulsory service of aliens therein." [7]

E. *Foo's Voting Registration and His Voting in Multnomah County, Oregon*

An exhibit in this case shows that Foo was registered as a voter in Multnomah County, Oregon, from April 11, 1928, to December 21, 1941.

A statement by the Registrar of Elections for the same county, dated February 8, 1956, certifies that Foo voted in the primary election of May 18, 1928, and in the general election of November 6, 1928.

The appellant makes no specific comment regarding these two exhibits, but does quote from the case of Chin Wing Dong v. Clark, D.C.Wash.1948, 76 F.

Supp. 648, 650, 651, which the appellant erroneously attributes to this Court.

*Chin Wing Dong* is readily distinguishable on its facts from the instant case. There, the petitioner had resided in the United States from the time of his admission in 1908 until 1919. Here, the petitioner, born in China, resides in the British Crown Colony of Hong Kong. There, the petitioner's father had been adjudicated by the United States District Court at San Francisco "to have been an American-born citizen of Chinese ancestry". Here, the American citizenship of Foo, the appellant's father, has never been adjudicated by a Federal court, and, as we have seen, has not been established in the instant case.

But most important of all in Chin Wing Dong, the trial judge, after listening to the petitioner's testimony and studying the record, was satisfied that the petitioner's claim was just:

"I observed the petitioner carefully during his several examinations on different days during the hearing. I *observed his manner of testifying, his expression,* considered the other evidence and exhibits, *and from what I heard and saw* and from the exhibits and records which I examined I am satisfied that the substantial preponderance of the evidence again establishes that the petitioner is the Chinese-born son of the American-born father, Chin Jeung, and that under the facts and the law applicable the petitioner is an American citizen." [Emphasis supplied] (76 F.Supp. at page 651)

Contrasted with this is the skepticism expressed by two of the triers of fact in the instant case—Imogene E. Ellis, the United States Vice Consul at Hong Kong, and the District Judge. The Vice Consul reported:

---

**7.** See also United States ex rel. Koopowitz v. Finley, D.C.N.Y.1917, 245 F. 871, 876; United States v. Rumsa, 7 Cir., 1954, 212 F.2d 927, 936, certiorari denied 1954, 348 U.S. 838, 75 S.Ct. 36, 99 L.Ed. 661.

"As the documentary evidence was not sufficient to establish satisfactorily his identity, Louie Hoy Gay and his mother, Ng Shee, who came as his witness, were interrogated at this office on September 30, 1952. It was soon evident that these two were not as they claimed to be, for the applicant not only contradicted his alleged mother's testimony, but frequently changed his own statements in his confusion. The alleged mother usually altered her version of the story to agree with her alleged son when his statements were made known to her."

After listening to the appellant and his alleged mother, the Vice Consul recommended that his passport application be refused.

No less skeptical was the District Judge:

"At various times throughout the trial, I expressed my doubts that the evidence which was being introduced proved or tended to prove that Louie Foo was born in Portland, Oregon, the place where he claims to have been born. On matters about which Louie Foo should have been able to testify readily, he was vague and contradictory or else he said that he did not remember. This was particularly true of testimony concerning his activities as a child and details about his parents."

Accordingly, we are unable to say that the Court below erred in finding that the appellant "has failed to prove by a preponderance of the evidence that said Louie Foo was a citizen of the United States by birth or naturalization."

### 4. *Conclusion*

Therefore, since we hold that there was substantial evidence to support the lower court's findings that the appellant had failed to prove either that Foo was his father or that Foo himself was an American citizen, the judgment is

Affirmed.