**LEE HON LUNG, Appellant,**

v.

**John Foster DULLES, Secretary of State of the United States of America, Appellee.**

**No. 15996.**

United States Court of Appeals
Ninth Circuit.

Nov. 10, 1958.

N. W. Y. Char, Honolulu, Hawaii, for appellant.

Louis B. Blissard, U. S. Atty., Charles B. Dwight, III, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before ORR, POPE and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Lee Hon Lung brought this action against the Secretary of State for a judgment declaring plaintiff to be a citizen of this country.[1] After a trial without a jury, judgment was entered for defendant. On appeal, plaintiff raises questions pertaining to the burden and standard of proof, findings of fact, admissibility of evidence, and the denial of a motion for a new trial.

The case appellant sought to prove may be briefly summarized. He was born in Honolulu, Territory of Hawaii, on April 4, 1899. When about seven months old, he left Honolulu for China with his father, mother, and brother. He returned to Honolulu in 1923. On January 7, 1924, a board of special inquiry of the immigration service rendered a decision admitting appellant as a Hawaiian-born citizen of the United States. Since then he has resided continuously in Honolulu. In April 1957, the Department of State denied his application for a passport on the ground that he was not a national of the United States.

The Government conceded that appellant arrived in Honolulu in 1923, and was admitted by a board of special inquiry as a citizen of the United States. It also conceded that appellant has resided in Honolulu continuously since that time. It denied that appellant was in fact born in the Hawaiian Islands, thus challenging the 1924 board decision to that effect. The trial court adopted the Government's view of the evidence.

As the plaintiff in this declaratory judgment action, appellant had the burden of proving that he is an American citizen. The burden of proof which rested upon him was the ordinary burden of proof resting on plaintiffs in civil actions. He was thus required to establish his citizenship by a fair preponderance of the evidence. Lau Ah Yew v. Dulles, 9 Cir., 257 F.2d 744.

He established a prima facie case by showing that on January 7, 1924, a special board of inquiry had admitted him as an American citizen. This 1924 determination, however, was not res judicata. The Government was entitled to overcome this prima facie case, if it could, by showing that the 1924 determination had been obtained by fraud or error. Et Min Ng v. Brownell, 9 Cir., 258 F.2d 304.[2]

1. Jurisdiction was asserted under § 360(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1503(a), and the Declaratory Judgment Act, 28 U.S.C.A. § 2201.

2. The necessity of showing "fraud or error," in order to overcome such a prima facie case, is also referred to in McGrath v. Chung Young, 9 Cir., 188 F.2d 975, 977. The rule is stated somewhat less rigorously, from the Government's standpoint, in Wong Kam Chong v. United States, 9 Cir., 111 F.2d 707, 710. The court there indicated that such a prima facie case could be overcome by "contrary evidence, such as evidence showing that the prior determinations were procured by fraud or as a result of error * * *." On the other hand, some earlier cases state the rule in a way which is less favorable to the Govern-

The trial court found in effect that the 1924 board decision had been obtained by fraud or error.[3] In making this finding the court determined that the affirmative rebutting evidence offered by the Government was of at least equal weight with appellant's evidence, including the 1924 board decision. The court did not require of the Government any special standard of proof. It apparently considered that the rebutting evidence should prevail if it seemed at least equally as persuasive as all of the evidence submitted by appellant.[4]

Appellant contends that the trial court erred in not holding the Government to a higher standard of proof in rebutting appellant's prima facie case. He argues that the Government's rebutting evidence tending to show fraud or error could not overcome this kind of a prima facie case unless it was "clear and convincing."

Appellant cites Delmore v. Brownell, 3 Cir., 236 F.2d 598, in support of this view. While residing in Italy, Delmore obtained a letter from the Commissioner of Immigration stating that it appeared that Delmore was born in San Francisco, as he had claimed. It was further stated in this letter that it was the view of the service, in the light of the facts submitted and considered, that "Delmore may properly be regarded a native and citizen of the United States." In affirming a judgment declaring Delmore to be a citizen, the court said, at page 600:

"\* \* \* Once the United States has determined that an individual is a citizen, it should be required to disprove its own determination by 'clear, unequivocal, and convincing evidence' \* \* \*."[5]

In Delmore, the court stated that a different rule might be in effect in the Ninth Circuit, citing Mah Toi v. Brownell, supra. The Third Circuit opinion states that the ruling in Mah Toi was clouded by a concession referred to in the Mah Toi opinion.[6] It was made clear,

ment. In Choy Yuen Chan v. United States, 9 Cir., 30 F.2d 516, 517, it was held that a decision of a board of special inquiry must stand "in the absence of a charge that he has committed some act which justifies his deportation, or some affirmative proof upon the part of the government that he obtained admission fraudulently." In Lee Choy v. United States, 9 Cir., 49 F.2d 24, 26, and Leong Kwai Yin v. United States, 9 Cir., 31 F.2d 738, it was held that such a prima facie case stands "until overcome by proof tending to establish that the same was issued improvidently or was fraudulently obtained." The latter case, however, also refers to "fraud or error" as being sufficient to overcome the prima facie case established by a board decision.

3. There is no explicit finding of fact to this effect, but such a finding is implicit in the findings of fact read as a whole and in the light of the trial court's filed opinion.

4. This view of what the trial court did is warranted by that court's explicit conclusion of law that "[a] prima facie case is a minimum amount of proof." The court was here making a shorthand reference to a general rule of evidence as stated in two cases which the court cited in its filed opinion. In the first of these, Mah Toi v. Brownell, 9 Cir., 219 F.2d 642, 644, the court said: " 'Prima facie evidence is a minimum quantity. It is that which is enough to raise a presumption of fact; or, again, it is that which is sufficient, when unrebutted, to establish the fact.' Otis & Co. v. Securities and Exchange Commission, 85 U.S. App.D.C. 122, 176 F.2d 34, 42. \* \* \*" In the second cited case, Louie Hoy Gay v. Dulles, 9 Cir., 248 F.2d 421, the same language was quoted.

5. Substantially the same rule had previously been announced in Ah Kong v. Dulles, D.C.N.J., 130 F.Supp. 546, 548, cited in the Delmore decision.

6. The pertinent language of the Mah Toi opinion reads as follows:
"Appellant concedes that if the superior court order was not conclusive evidence of the fact of appellant's native birth as a matter of law, its admission in evidence did not shift the burden of proving the fact, but merely required that substantial evidence rebutting the presumption be presented to the court. The final question then is whether there is sufficient evidence in the record to sustain the trial court's finding of fact, it appearing therefrom that the trial court found the presumption rebutted—at least

however, that the Third Circuit would adhere to the rule announced in Delmore even though Mah Toi be regarded as stating a contrary rule.

It may or may not be that the rule announced in Mah Toi is clouded by a concession. In any event, that decision is not in point because the prima facie case there established did not consist of a favorable decision by a board of special inquiry. Instead, it consisted of proof of a California superior court judgment reciting that the plaintiff had been born in the United States. We held that, under California law, such a judgment should be accorded the same evidentiary value as an ordinary birth certificate. The standard of proof necessary to overcome that kind of a prima facie case is not necessarily the same standard which is to be applied here.

In arguing that the Government is chargeable with only the ordinary standard of proof in rebutting a prima facie case of the kind which appellant established, appellee cites Louie Hoy Gay v. Dulles, 9 Cir., 248 F.2d 421; Mah Toi v. Brownell, supra; and Ly Shew v. Dulles, 9 Cir., 219 F.2d 413.

As noted previously, Mah Toi is not in point. Likewise and for the same reason, Louie Hoy Gay is not in point. The document there thought to establish, or to assist in establishing, a prima facie case was a "Decree for Registration of Birth," issued by the circuit court of Multnomah county, Oregon.[7] Ly Shew v. Dulles, supra, is not in point since the claimants involved in that case had never been in the United States, and had never been the subjects of a favorable determination by any agency of the United States.

Neither party has cited, nor has our research disclosed, a decision of this court squarely in point on the question of whether the Government is charged with a special standard of proof in rebutting a prima facie case consisting of a board decision admitting one to citizenship. It is true that there is language in some of our past decisions tending to support the Government's view that no special standard of proof is required to rebut such a prima facie case.[8] On the other hand, there is language in some other past decisions which tends to support appellant's contrary view.[9] In none of these cases,

to the extent of evenly balancing the weight of all the credible evidence with no preponderance thereof in favor of appellant." 219 F.2d 644.

7. A certificate of identity issued by an immigration official in Seattle was also introduced in evidence. But this document, which pertained to the claimant's father (as did the Oregon judgment referred to above), was held to be irrelevant because it did not deal with the father's status at the time of the claimant's birth.

8. In Wong Kam Chong v. United States, supra, 111 F.2d at page 710, the court said that, where rebutting evidence is submitted, " * * * it is for the trial court to determine from the whole body of evidence whether the alien has complied with the statutory requirement compelling him to 'establish, by affirmative proof, to the satisfaction of such * * * judge * * * his lawful right to remain in the United States'. * * * " In Lee Choy v. United States and Leong Kwai Yin v. United States, supra, (footnote 2) it was stated that the prima facie case stands until overcome by proof "tending to show" that the certificate

was issued improvidently, or was fraudulently obtained. In Yuen Boo Ming v. United States, 9 Cir., 103 F.2d 355, 358, it was stated that possession of a citizen's return certificate " * * * casts on the Bureau the burden of producing substantial evidence of alienage. * * *" See, also, Lum Mon Sing v. United States, 9 Cir., 124 F.2d 21, and Wong Chow Gin v. Cahill, 9 Cir., 79 F.2d 854. To be distinguished are cases such as Lau Ah Yew v. Dulles, 9 Cir., 257 F.2d 744, where the issue was not whether the board decision was the result of fraud or error, but whether the plaintiff was the person named in that decision.

9. In Dong Ling v. United States, 9 Cir., 30 F.2d 65, it was held that a decision of a board of special inquiry had been overcome by "the decided preponderance" of the testimony. In Chun Kock Quon v. Proctor, 9 Cir., 92 F.2d 326, 327, this court said that "where, as here, there exists a prior determination that he is a citizen, by the officials constituted for the protection of his rights as such, there is imposed a similar duty upon the immigration officers to be vigilant, when

however, was the court presented with the specific question that is now posed, and none of them represents a clear-cut holding one way or the other.

The rule announced in the Delmore case from the Third Circuit, requiring the Government to disprove its prior determination by "clear, unequivocal, and convincing" evidence, equates with the rule which obtains in denaturalization cases. See Schneiderman v. United States, 320 U.S. 118, 123, 125, 63 S.Ct. 1333, 87 L.Ed. 1796; Baumgartner v. United States, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525.[10]

■ A certificate of citizenship issued in a naturalization proceeding is based upon a judicial decree. In this respect, denaturalization cases differ from the kind of case which is now before us. Instead of seeking to set aside a judicial decree, the Government here seeks to set at naught a decision by a board of special inquiry. A proceeding before a board of special inquiry is not a judicial proceeding, and a decision rendered by such a board does not have the standing of a judgment.[11]

In other respects, however, a denaturalization proceeding of the kind involved in the Schneiderman and Baumgartner cases seems to be closely akin to the effort which the Government here made to overcome the plaintiff's prima facie case consisting of a favorable board decision.

In the Schneiderman and Baumgartner cases, the position of the Government in essence was that the persons in question had never occupied an unchallengeable citizenship status. This is likewise the Government's position in the case now before us.[12]

In the Schneiderman and Baumgartner cases, the pertinent statute authorized the setting aside of a certificate of citizenship on the ground of fraud or by showing that it was "illegally procured." Section 15 of the act of June 29, 1906, 34 Stat. 596.[*] In Schneiderman, it was assumed (320 U.S. at page 124, 63 S.Ct. at page 1336) that a certificate is "illegally procured" within the meaning of the statute if it is later determined that an essential finding of fact in the naturalization proceeding was erroneous.

■ In cases of the kind now before us, a decision of a board of special inquiry admitting a person as a citizen of the United States may be rebutted by showing that the decision was obtained by fraud or "error."[13] While our decisions have not defined "error," as used in this context, the word unquestionably embraces both errors of law and of fact. It therefore appears that the grounds available to the Government in this case closely approximate those which were availa-

---

he is seeking entry to the country of his birth, not to deprive him of his birthright." In McGrath v. Chung Young, 9 Cir., 188 F.2d 975, 977, it was held that such a prima facie case could not be overcome by evidence attacking the credibility of witnesses who testified at the original board hearing. Nor can such a prima facie case be overcome by revealing minor discrepancies in the testimony of plaintiff's witnesses. Wong Kam Chong v. United States, 9 Cir., 111 F.2d 707, 710–712; Choy Yuen Chan v. United States, 9 Cir., 30 F.2d 516, 517.

10. The same rule applies in denationalization (expatriation) cases. See Gonzales v. Landon, 350 U.S. 920, 76 S.Ct. 210, 100 L.Ed. 806; Mitsugi Nishikawa v. Dulles, 356 U.S. 129, 78 S.Ct. 612, 2 L.Ed.2d 659.

11. The 1924 board proceeding here in question was conducted pursuant to Act of 1917, chap. 29, § 17, 39 Stat. 887, now 8 U.S.C.A. § 1226. Under this statute, boards of special inquiry were appointed by the commissioner of immigration or inspector in charge at various ports of arrival. Each board consisted of three members selected from such of the immigration officials in the service as the Commissioner General of Immigration, with the approval of the Secretary of Labor, from time to time designated.

12. In denationalization cases, on the other hand, the Government seeks to take away an established status of citizenship because of events which thereafter occurred.

* Now 8 U.S.C.A. § 1451.

13. See the text of this opinion preceding footnote 2.

ble to it in Schneiderman and Baumgartner.

More important than the similarities pointed out above is the fact that the practical effect of a decision favorable to the Government in this case is the same as that which results from a decision favorable to the Government in a denaturalization case. In either case, the individual is stripped of what in Schneiderman, 320 U.S. at page 122, 63 S.Ct. at page 1335 was termed the "priceless benefits" which derive from the status of citizenship. In either case, the Government "seeks to turn the clock back," [14] with possible grievous consequences.

In Schneiderman, the Supreme Court thought it was significant that the clock would be turned back twelve years. Here the clock would be turned back thirty-four years—to 1924. The following observation made in Baumgartner, 322 U.S. at page 675, 64 S.Ct. at page 1245, where denaturalization was sought only ten years after a certificate of citizenship had been issued, is pertinent in our case:

"* * * New relations and new interests flow, once citizenship has been granted. All that should not be undone unless the proof is compelling that that which was granted was obtained in defiance of Congressional authority. * * *"

It appears to be the Government's present view that board proceedings during the 1920's were too informal and summary to be trustworthy. But it was the Government, and not appellant, which prescribed the kind of proceedings which are now questioned. Appellant acted in reliance on the board decision which resulted, as he was expected to do. The consequences for him are as grave as if that decision had been rendered by a court of law.

In Baumgartner, supra, 322 U.S. at page 675, 64 S.Ct. at page 1245 it was said that relaxation in the vigor of prior proceedings in which it was determined that an applicant for citizenship held allegiance to this country "is not to be corrected by meagre standards for disproving such allegiance retrospectively. * * *" So here, the fact that past board proceedings may have been informal and summary does not warrant corrective procedures which fail to take acount of the human values which have attached. If the Government is to turn the clock back after all these years, it should meet a standard of proof which is not meagre.

■ For the reasons stated, we hold that where one has, over a long period of years, acted in reliance upon a decision of a board of special inquiry admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such decision must be established by evidence which is clear, unequivocal, and convincing.[15]

■ The trial court did not hold the Government to such a standard of proof in this case, and therefore erred. Ordinarily the appropriate remedy would be to reverse and remand with directions to the same trial judge to make new findings in the light of what it said in the opinion. However, the judge who tried this case is now deceased. It will therefore be necessary to reverse and remand for a new trial.

The trial court did not err in the admission and exclusion of tendered evidence. In view of the fact that there must be a new trial, it is not necessary to notice the remaining specifications of error.

Reversed and remanded with directions to grant appellant a new trial.

14. Schneiderman v. United States, supra, 320 U.S. at page 122, 63 S.Ct. at page 1335.

15. While this is the same standard of proof that was applied by the Third Circuit in Delmore, our case is unquestionably a stronger case for the application of such a rule. In Delmore, the prior Government determination consisted only of a letter in reply to a letter. Delmore did not establish himself in this country in reliance on that determination. Here the determination was that of a board of special inquiry, in reliance upon which appellant has lived in Honolulu for more than thirty years.