MURGUIA, Circuit Judge,
joined in full by NGUYEN, Circuit Judge, and as to Parts A, B, and D by THOMAS, Chief Judge, and PREGERSON and W. ’ FLETCHER, Circuit Judges, concurring in part and dissenting in part:
This case involves “the vexing nature of the distinction between questions of fact *437 and questions of law.” See Pullman-Standard v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). On some questions, the answer is easy. How many times was Petitioner deported? Under what name? Did Petitioner successfully apply for a social security number? Has he ever been convicted of a crime as a U.S. citizen? How many children does he have, and what is the status of their citizenship? Is the Petitioner’s testimony persuasive? These are undoubtedly questions of fact, and we review the district court’s answers to these questions for clear error. See Fed.R.Civ.P. 52(a)(6).
On others, the fact-or-law distinction is more difficult. Did the Government prove by “clear, unequivocal, and convincing” evidence that Petitioner’s evidence of U.S. citizenship was illegally procured or obtained by fraud?[1] Lee Hon Lung v. Dulles, 261 F.2d 719, 724 (9th Cir.1958). The Government contends, and the majority concludes, that this is a question of fact, subject to deference under clear error review. I believe that the district court’s answer to this question is not a “pure finding! ] of fact,” but a finding that “ ‘clearly implies] the application of standards of law.’ ” See Pullman-Standard, 456 U.S. at 286 n. 16, 102 S.Ct. 1781 (quoting Baumgartner v. United States, 322 U.S. 665, 671, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944)). Therefore, I would review that question de novo. See id. I consequently would reverse the district court and grant the petition for review.
A.
The Supreme Court first prescribed a de novo standard for reviewing the Government’s burden of proof in citizenship cases in Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240. There, the Supreme Court considered whether the Government had proven by clear, unequivocal, and convincing evidence that Carl Baum-gartner, a naturalized U.S. citizen, had obtained his citizenship through fraud. See id. at 671-72, 64 S.Ct. 1240. The answer to this question, according to the Court, “more clearly impli[ed] the application of standards of law” than pure findings of fact. See id. at 671, 64 S.Ct. 1240. De novo review was necessary because otherwise the “emphasis” on the Government’s high burden of proof in citizenship cases “would be lost” if the district court’s ultimate conclusion on that question was “deemed a ‘fact’ of the same order as all other ‘facts,’ not open to review.” See id. at 671, 64 S.Ct. 1240 (internal citation omitted). Notably, the Court distinguished the ultimate burden of proof question, which required a “conclusion ... drawn from the whole mass of evidence,” from “subsidiary” findings of fact, such as who said what, when, and where. See id. at 670-71, 64 S.Ct. 1240.
As in Baumgartner, when “Congress has not spoken and [when] the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/ law distinction at times has turned on a determination that, as a matter of the sound administration of. justice, one judicial actor is better positioned than another to decide the issue in question.” See Miller v. Fenton, 474 U.S. 104, 113-14, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Considering the gravity of the interest at stake— U.S. .citizenship and all its attendant rights — and the correspondingly high burden of proof, the Supreme Court deliberately chose to designate the question of the Government’s burden of proof as a *438 question of law subject to independent, or de novo, review.[2] See Baumgartner, 322 U.S. at 670-71, 64 S.Ct. 1240.
When deciding issues of citizenship in denaturalization cases, the Supreme Court has not strayed from its reasoning in Baumgartner. See, e.g., Fedorenko v. United States, 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981) (“[I]n reviewing denaturalization cases, we have carefully examined the record ourselves.”); Costello v. United States, 365 U.S. 265, 269-70, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (“The issue in these cases is so important to the liberty of the citizen that the weight normally given concurrent findings of two lower courts does not preclude reconsideration here.”); Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (same); Nowak v. United States, 356 U.S. 660, 663, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958) (scrutinizing the record in a denatu-ralization case “with the utmost care”); Knauer v. United States, 328 U.S. 654, 657-58, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946) (“We reexamine the facts to determine whether the United States has carried its burden of proving by ‘clear, unequivocal, and convincing’ evidence, which does not leave ‘the issue in doubt,’ that the citizen who is sought to be restored to the status of an alien obtained his naturalization certificate illegally.”).
B.
As the majority recognizes, we have previously applied Baumgartner’s independent standard of review in an alienage determination case. See Lim v. Mitchell, 431 F.2d 197, 199 (9th Cir.1970). In Lim, the plaintiff asked for a judgment declaring him to be a citizen of the United States after the Immigration and Naturalization Service began to question his identity. Id. at 198-99. At the time of the lawsuit, Lim had been considered a derivative citizen for almost thirty-six years. See id. The Government argued that Lim was not entitled to citizenship because he was actually related to Jew Look, a Chinese citizen, not Lim Sam, a U.S. citizen. See id. at 199. The district court agreed, holding that the Government had shown that Lim was not a U.S. citizen. Id. at 200. Independently reviewing this question, we reversed, holding that in light of the Service’s prior determination of citizenship and Lim’s reliance on it, the Government had failed to show “clear, unequivocal, and convincing evidence” that Lim was not a U.S. citizen. See id. at 204.
As in Lim, the Government here has treated Petitioner as a citizen. He has been issued more than one U.S. Passport. He has been convicted and sentenced to prison as a U.S. citizen. And six of his children have been awarded derivative citizenship or lawful permanent resident status based on Petitioner’s own citizenship. Although none of these actions have the conclusiveness of a formal naturalization, Petitioner has relied on these actions, made his home here, and established the ties and roots of permanent citizenship. In cases such as this — where the Government has treated an individual like a citizen for years — we have held that:
[T]he practical effect of a decision favorable to the Government in this case is
*439 the same as that which results from a decision favorable to the Government in a denaturalization case. In either case, the individual is stripped of what [the Supreme Court] termed “the priceless benefits” which derive from the status of citizenship. In either case, the Government “seeks to turn the clock back,” with possible grievous consequences.
Lee Hon Lung, 261 F.2d at 724 (internal citation omitted) (quoting Schneiderman v. United States, 320 U.S. 118, 122, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943)); cf. Sanchez-Martinez v. INS, 714 F.2d 72, 74 (9th Cir.1983) (distinguishing Lim and applying a clear error standard of review because “there ha[d] been no prior determination of citizenship” and petitioner’s “claim to United States citizenship [was] based solely on his own belief and the recollections of others as to his putative birth”). Because the Government repeatedly treated Petitioner as a citizen over the course of forty years, I would follow the clear direction of Lim and apply Baumgartner’s two-step standard of review to this case.
c.
The majority agrees that Lim squarely addresses this case. See Maj. Op. at 424-25 (“If Lim is good law, it indeed controls the outcome here.”). In order to get around Lim, which has been the law of our Circuit for forty-five years, the majority overrules it.[3]
The majority concludes that Baumgart-ner simply does not apply because Lim, and this case, involved an alienage determination, not a denaturalization proceeding.[4] But the majority uses too blunt a knife. Although the Supreme Court has generally stated the importance of citizenship in denaturalization and expatriation cases, it has never suggested that the wrongful deportation of a United States citizen is a lesser loss of liberty than the stripping of one’s citizenship. See Baum-gartner, 322 U.S. at 680, 64 S.Ct. 1240 (Murphy, J., concurring) (“The naturalized citizen has as much right as the natural born citizen to exercise the cherished free-
*440 doms of speech, press and religion.... ”); Woodby v. INS, 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (“The immediate hardship of deportation is often greater than that inflicted by denaturalization, which does not, immediately at least, result in expulsion from our shores.”); see also Lee Hon Lung, 261 F.2d at 724 (noting that the practical effect of a judgment declaring someone to be a non-citizen is the same as a denaturalization order). As plainly illustrated in this case, the important interests of citizenship present in de-naturalization proceedings can also permeate alienage determinations made in the context of deportation proceedings. In seeking to remove Petitioner, the Government’s sole argument is that Petitioner is not actually who he said he was — i.e., that Petitioner’s citizenship was obtained through fraud. This is the same allegation that the Government made against the petitioners in the denaturalization cases. Cf Baumgartner, 322 U.S. at 671-72, 64 S.Ct. 1240 (“The gravamen of the Government’s complaint and of the findings and opinion below is ... in short, that Baumgartner was guilty of fraud.”).
The majority’s hard-line distinction between denaturalization and deportation proceedings further ignores the fact that the Supreme Court and this court have consistently applied the same intermediate burden of proof to both types of proceedings.[5] See Chaunt, 364 U.S. at 353, 81 S.Ct. 147; Woodby, 385 U.S. at 286, 87 S.Ct. 483. We have also applied the same burden of proof to cases where citizenship is at issue. See also Lim, 431 F.2d at 199; Lee Hon Lung, 261 F.2d at 723. And that is the same burden of proof that the majority applies today. Maj. Op. at 419-20. The burden of proof issue cannot be separated from the appellate standard of review in this case. It was only because of this “exacting standard of proof’ that the Baumgartner Court applied de novo review to the district court’s ultimate determination. See Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240 (indicating that the trial court burden of proof “would be lost” without heightened appellate review). Together, the burden of proof and standard of review work to safeguard the “most valuable right[]” of citizenship. See Gorbach v. Reno, 219 F.3d 1087, 1098 (9th Cir.2000) (en banc). For these reasons, I would hold that Lim is sound and should be followed.
D.
The majority also suggests that the Baumgartner standard of review, as adopted by this court in Lim, has been impliedly overruled by the Supreme Court in Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), and Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Maj. Op. at 424-25. The majority concludes that Lim is no longer good law because “the Supreme Court has questioned whether there can ever be independent appellate review of a question of fact.” Maj. Op. at 424-25. According to the majority, the court “need *441 only conclude that Lim has been overruled, leaving the Supreme Court to decide whether it has also implicitly repudiated its own decisions.” Maj. Op. at 425 n. 9. But that is a distinction without a difference. Lim merely adopted Baumgartner and its progeny’s appellate standard of review. See Lim, 431 F.2d at 199-200. Therefore, the two cases rise and fall together. Until the Supreme Court holds otherwise, Baumgartner and its progeny remain good law.
In contrast to Baumgartner, both Pullman-Standard and Anderson concerned a question of fact — the finding of intentional discrimination in discrimination cases. See Anderson, 470 U.S. at 573-76, 105 S.Ct. 1504; Pullman-Standard, 456 U.S. at 286-90, 102 S.Ct. 1781. Indeed, the fact/ law distinction was abundantly clear in Pullman-Standard and Anderson because Congress had designated the question of intentional discrimination as “a pure question of fact.” See Pullman-Standard, 456 U.S. at 286 n. 16, 102 S.Ct. 1781.
Significantly, the Court in Pullman-Standard expressly distinguished Baum-gartner as not involving a question of fact. Id. Affirming that Baumgartner applied independent review to “the conclusion ... that the exacting standard of proof had been satisfied” in citizenship determinations, the Pullman-Standard Court explained that the Baumgartner Court’s designation of this question as an “ultimate fact” “referred not to pure findings of fact — -as [it found] discriminatory intent to be in this context — but to findings that ‘clearly impl[y] the application of standards of law.’ ” Id. (second alteration in original) (quoting Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240). As the Pullmartr-Standard Court recognized, Rule 52(a)’s mandate for clear error review simply “does not apply to conclusions of law.” Id. at 287, 102 S.Ct. 1781; see also id. at 289 n. 19, 102 S.Ct. 1781 (declining to address “the much-mooted issue of the applicability of the Rule 52(a) standard to mixed questions of law and fact”).
The Supreme Court’s recent decision in Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc., — U.S.-, 135 S.Ct. 831, — L.Ed.2d - (2015), did not change this distinction. Teva, like Pullman-Standard and Anderson, did not address the Government’s burden of proof in citizenship cases. Rather, Teva addressed the appropriate standard of review to be applied to “subsidiary factual matters” made in the course of patent claim construction. Id. at 836. The Court concluded that these “subsidiary factual matters” were questions of pure fact subject to clear error review under Rule 52(a). Id. at 836-37. Notably, the Court did not disturb its previous conclusion that Baumgartner dealt with an issue of law, not fact. See Pullman-Standard, 456 U.S. at 286 n. 16, 102 S.Ct. 1781. The Court also did not change its decades-old guidance on how to make the faef/law distinction. See id.
In light of the Supreme Court’s clear distinction of Baumgartner and its repeated refusals to overrule that precedent, I would hold that Baumgartner’s independent standard of review, as applied to al-ienage determinations in Lim, remains binding on this Circuit. See State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) (“[I]t is [the Supreme] Court’s prerogative alone to overrule one of its precedents.”); see also United States v. Zajanckauskas, 441 F.3d 32, 37-38 & n. 5 (1st Cir.2006) (holding that Baumgartner is “still valid” and has “not been overruled in any way”).
E.
Independently reviewing the district court’s ultimate determination that the Government met its burden of proof and *442 reviewing the district court’s underlying findings of fact for clear error, Baumgart-ner, 322 U.S. at 670-71, 64 S.Ct. 1240, I would reverse the district court and grant the petition.
All agree that the district court correctly determined that Petitioner carried his initial burden of proving by a preponderance of evidence that he is an American citizen by the name of Reynaldo Mondaca-Carlon. Maj. Op. at 419-20. The Government thus was required to present clear, unequivocal, and convincing evidence that Petitioner was not who he claimed to be. Maj. Op. at 419-20. The Government did not meet its high burden.
First, several of the district court’s underlying findings of fact were clearly erroneous. See McCormack v. Hiedeman, 694 F.3d 1004, 1018 (9th Cir.2012) (when reviewing for clear error a district court’s factual findings “may be reversed only if ‘illogical, implausible, or without support in inferences that may be drawn from the facts in the record’ ” (quoting Am. Trucking Ass’ns, Inc. v. City of L.A., 660 F.3d 384, 395 (9th Cir.2011))).
As the Government admits, and the majority agrees, there is no evidence in the record to support the district court’s findings that Petitioner was deported in July 1951, September 1951, or November 1952. Maj. Op. at 427.
There is also no evidence in the record supporting the district court’s conclusion that Petitioner would have had to show a birth certificate in order to obtain a social security card. Maj. Op. at 427; see also United States v. Berber-Tinoco, 510 F.3d 1083, 1091 (9th Cir.2007) (“A trial judge is prohibited from relying on his personal experience to support the taking of judicial notice.” (internal quotation marks omitted) (citation omitted)). This error is not inconsequential. The district court solely relied on this erroneous conclusion to discount Petitioner’s testimony that he obtained his authentic U.S. birth certificate from his mother after he was deported the first time. Thus, the district court had no basis to conclude that Petitioner did not rightly possess an authentic U.S. birth certificate.
The district court relied on several other clearly erroneous findings in discounting Petitioner’s testimony. For example, the district court found it implausible that Petitioner would not have identified himself as a U.S. citizen each time he was deported in part because deportation was against his financial interest. But there is no evidence in the record to support the district court’s findings regarding employment opportunities for a farm worker in the 1950s, much less Petitioner’s own personal financial motives. Similarly, the district court improperly speculated that Petitioner only began using the name Reynaldo Mondaca after he was married in order to obtain the benefits of a U.S. citizen. This finding is flatly contradicted by the record, which shows that Petitioner obtained a Social Security number under Reynaldo’s name in 1953, almost twenty years before his marriage.
Without these clearly erroneous findings, but considering all the other facts as found by the district court, I would conclude that the Government has not proven by clear, unequivocal, and convincing evidence that Petitioner is Salvador Monda-ca-Vega, citizen of Mexico.
For each finding of fact offered by the Government, there is an equal or more significant finding of fact favoring the Petitioner. For example, it is undisputed that Petitioner has accepted voluntary departure and has been deported under the name Salvador Mondaca-Vega. But it is also undisputed that the Government has repeatedly treated Petitioner as Reynaldo *443 Mondaca-Carlon, a U.S. citizen. In 1953, Petitioner obtained a Social Security number, which he continues to use today. In fact, according to the Social Security Administration, Petitioner is currently qualified for Social Security benefits. Similarly, the U.S. Department of State issued Petitioner a valid passport at least two times, once in 1998 and again in 2005. The United States also granted Petitioner’s children derivative citizenship based on his status. Finally, and perhaps most damaging to the Government’s position, the Government charged Petitioner in federal court as a U.S. citizen. There is no evidence in the record that the Government ever questioned Petitioner’s citizenship in conjunction with that proceeding.
The Government also points to Petitioner’s signed statement sworn under the name Salvador Mondaca-Vega. But Petitioner signed many other documents under the name Reynaldo Mondaca-Carlon.[6] For example, in his 1953 application for a Social Security card, Petitioner indicated that his parents were Marin Mondaca and Antonia Carlon and that he was born in Imperial, California. Petitioner also listed his name as Reynaldo on all family documents, including documents that have no relation to his citizenship status. He is likewise listed as Reynaldo on all of his children’s baptismal certificates filed with his parish in Mexico.
The fingerprint evidence is similarly inconclusive. Although Petitioner’s fingerprints match those taken by the INS for Salvador Mondaca-Vega, Petitioner’s fingerprints also match an FBI Identification Record that identifies Petitioner as a U.S. citizen, born in California.
In light of the conflicting “whole mass of evidence,” see Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240, I find it impossible to conclude that the Government has met its burden by clear, unequivocal, and convincing evidence. See Lim, 431 F.2d at 203. I would reverse the district court and grant the petition. Therefore, I respectfully dissent.

. I agree with the majority that the district court did not err in requiring the Government to satisfy the intermediate burden of proof and therefore concur in Sections I-IV of the majority opinion. See Maj. Op. at 419-22.

. As used in Baumgartner, the phrase “independent assessment” is the functional equivalent of de novo review. By using this term, I do not suggest that Baumgartner allows "de novo” review of the entire record or the district court's underlying factual determinations. It does not. Even where the Supreme Court has prescribed “independent review,” we still must afford proper deference to any factual finding to which Rule 52(a)(6) applies. See Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499-500, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

. The other dissent also would overrule Lim, but on different grounds. See Judge N.R. Smith's Dissent at 45. According to the other dissent, Congress prescribed the appropriate scope and standard of judicial review in 8 U.S.C. § 1252(b). As discussed above, I agree that Rule 52(a)(6) requires us to review the district court’s findings of fact for clear error. See supra note 2. The question here is not whether Rule 52(a)(6) applies, but whether the district court’s ultimate determination as to the Government's burden of proof is a finding of fact or a conclusion of law. On that question, Congress has remained silent and has not, as the dissent suggests, concluded that the district court was "better positioned than another to decide the issue in question.” Judge N.R. Smith’s Dissent at 435-36 (quoting Miller v. Fenton, 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). Miller, on which the dissent relies, was a habeas case that did not involve citizenship claims. Moreover, the Court in Miller reaffirmed that "the ultimate question of the admissibility of a confession merits treatment as a legal inquiry requiring plenary federal review.” 474 U.S. at 115, 106 S.Ct. 445. Similarly, both the Supreme Court and this Court have definitively held that the issue here “more clearly impli[es] the application of standards of law” and therefore should be reviewed de novo. See Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240; Lim, 431 F.2d at 199-200; see also Pullman-Standard, 456 U.S. at 286 n. 16, 102 S.Ct. 1781.

. As further justification for erecting a rigid barrier between denaturalization and alienage determinations made in the context of deportation proceedings, the majority suggests that Baumgartner only applies when a case implicates free-speech or political persecution. See Maj. Op. at 423-24. These concerns, according to the majority, are "uniquely present in the denaturalization context.” See Maj. Op. at 423. But the risk of political persecution does not arise only in the denaturalization context; it is also present in deportation proceedings.

. The majority notes that in deportation proceedings we typically review agency fact finding with deference. Maj. Op. at 425-26. However, we do not provide deference to agency fact finding in nationality claims, such as this one, where there are genuine issues of fact. See 8 U.S.C. § 1252(b)(4) (specifically exempting 8 U.S.C. § 1252(b)(5)(B) from the deferential scope of review); id. § 1252(b)(5)(B) (directing the court of appeals to "transfer the proceeding to the district court ... for a new hearing on the nationality claim” if "the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented”).

. Petitioner acknowledged that he used various aliases, but testified that Reynaldo Mon-daca-Carlon is his true name and identity. The district court gave little weight to this testimony, finding that the testimony was inconsistent and implausible. As discussed above, much of the district court’s adverse credibility determination was based on clearly erroneous findings of fact and improper speculation. That said, the district court provided other reasons for discounting Petitioner’s testimony that were not clearly erroneous. For example, the district court noted discrepancies between the Petitioner’s testimony and his deposition and other documentary evidence. See Maj. Op. at 427. Given this credibility determination, I likewise accord little weight to Petitioner’s testimony.