ORDER
The petition for review is denied.
Judge Hurwitz wrote an opinion joined by the full panel as to Parts I — III; by Judges Kozinski, Silverman, Rawlinson, Bybee, Murguia and Nguyen as to Part IV; and by Judges Kozinski, Silverman, Rawlinson and Bybee as to Parts V and VI.
Judge N.R. Smith wrote an opinion concurring in part and dissenting in part, which Chief Judge Thomas, and Judges Pregerson and W. Fletcher join as to Part I. Judge N.R. Smith concurs in the result of (but does not join) Parts V and VI of Judge Hurwitz’s opinion.
Judge Murguia wrote an opinion concurring in part and dissenting in part, which Judge Nguyen joins in full and which Chief Judge Thomas, and Judges Preger-son and W. Fletcher join as to Parts A, B and D.
Judges Kozinski, Silverman, Rawlinson, Bybee, N.R. Smith, and Hurwitz would deny the petition for review. Chief Judge Thomas and Judges Pregerson, W. Fletcher, Murguia, and Nguyen would grant the petition for review.
OPINION
Our task is to review a district court determination — made after a bench trial— that the petitioner[1] was born in Mexico, *417 not the United States. After finding the petitioner had introduced sufficient evidence that he is a U.S. citizen, the district court shifted the burden to the government to rebut by “clear, unequivocal, and convincing” evidence, and found that it had done so.
The petitioner claims that the district court eired in concluding that “clear, unequivocal, and convincing” evidence — a phrase we have used to describe the government’s[1] burden in alienage-determination proceedings — is identical to the traditional civil intermediate burden of proof. He argues the proper burden is instead more akin to the “beyond a reasonable doubt” standard that applies in criminal cases. We disagree, and hold that “clear, unequivocal, and convincing” is the familiar intermediate standard used in civil cases when particularly important individual interests are at stake.
Because we find no error in the district court’s application of the burden of proof, we also reach the second substantial question presented in this case — the standard of review applicable to the trial court’s findings of fact. The petitioner argues we must review the district court’s findings de novo. We hold, instead, that the “clear error” standard of Federal Rule of Civil Procedure 52(a) applies. Under that standard, the petition for review must be denied.
I.
A.
Although the parties sharply contest whether the petitioner is a U.S. citizen, much of the evidence in this case is a matter of public record and undisputed.
1. Two authentic birth certificates are in the record — one of Salvador Mondaca-Vega, born on June 3, 1931 in Sinaloa, Mexico, the other of Renoldo[2] Mondaca Carlon, born on July 17, 1931 in Imperial, California. Although the petitioner concedes he has on multiple occasions identified himself as Salvador Mondaca-Vega, he claims he is really Reynaldo Mondaca Carlon, a U.S. citizen.
2. It is uncontested that regardless of his place of birth, the petitioner grew up in El Fuerte, Sinaloa, Mexico. He came to the United States around 1951, when he was about twenty years old, to look for work. A long series of contacts with law enforcement and immigration authorities ensued.
His rap sheet indicates that in July 1951, the petitioner, identifying himself as Salvador Mondaca, was taken into custody by the Sheriffs Office in Auburn, California and transferred to federal immigration officials. In September 1951, the petitioner accepted voluntary departure under the name Salvador Mondaca-Vega.
3. The record also reflects various actions taken in 1952 and 1953 by individuals identifying themselves by the names on the birth certificates; the parties dispute whether these actions were taken by the petitioner. In September 1952, someone identifying himself as Salvador Mondaca unsuccessfully applied for a social security card, naming his place of birth as Mexico and stating that his date of birth was April 13, 1931. Also in September 1952, someone identifying himself as Reynaldo Mon-daca Carlon registered for selective service in Salinas, California; he was later found unacceptable for induction.
*418 In May 1953, a person claiming to be Reynaldo C. Mondaca and identifying his date of birth as July 17, 1931 and his place of birth as Imperial, California, successfully applied for a social security card. Handwriting analysis suggests the signature on this application belongs to the petitioner. Although the. district court made no finding as to who made the first social security card application and the selective service registration, the court concluded that the May 1953 application was made by the petitioner.
4. According to the rap sheet, in May 1953 and September 1954, the petitioner, claiming first to be Salvador Mondaca-Vega, then Salvador Mondaca, was transferred to immigration authorities in Washington State and deported to Mexico. A 1994 fingerprint analysis by the Seattle Police Department indicates that fingerprints taken on both occasions were from the same individual, and that they belong to the petitioner.
5. In September 1954, the petitioner, in a sworn interview with an INS official, stated that his name is Salvador Mondaca-Vega, that he was born on April 16,1931 in Sinaloa, Mexico, and that he is a Mexican citizen. Expert handwriting analysis submitted by both parties suggests the signature on the statement was made by the petitioner.
6. The rap sheet indicates that on at least two occasions after his 1954 deportation, the petitioner received voluntary departure — once in 1956 as Salvador Monda-ca-Vega, and once in 1966 under the name Jose Valdez-Vega. The name Salvador Mondaca-Vega also appears in an October 1969 entry for a bench warrant issued in California for failure to appear.[3]
7.In August 1970, the petitioner married Aurelia Estrella. They had nine children, six born in Mexico and three in the United States. In 1977, the petitioner successfully petitioned for adjustment of status for his wife and two of his Mexico-born children based on his asserted status as a U.S. citizen; the remaining four Mexico-born children received certificates of citizenship based on their father’s purported status. The Department of State issued the petitioner a U.S. passport in April 1998, and a replacement passport in September 2005 after the original was lost.
B.
The convoluted procedural history of this case begins in 1994, when the petitioner, after a conviction in Washington state court for second-degree assault, was charged with entry without inspection and making a false claim of U.S. citizenship and placed in removal proceedings.
1. After an evidentiary hearing, an immigration judge found by “clear, convincing and unequivocal” evidence that the petitioner is a non-citizen who entered without inspection and by misrepresentation. The BIA affirmed.
2. On review, we found the petitioner’s claim of U.S. citizenship presented genuine issues of material fact and, pursuant to the statute now codified at 8 U.S.C. § 1252(b)(5)(B),[4] transferred the proceedings to the Eastern District of Washington for a de novo determination of the petitioner’s alienage. Mondaca-Vega v. Ashcroft, 104 Fed.Appx. 627, 628 (9th Cir.2004). *419 The district court denied the parties’ cross-motions for summary judgment, Mondaca-Vega v. Holder, No. 2:04-cv-00339-FVS, 2011 WL 1195877, at *3 (E.D.Wash. Mar. 29, 2011), and conducted a bench trial.
3. At trial, the petitioner admitted that he had used the name Salvador Mondaca-Vega (and other names he could not remember). He claimed, however, that he never knew the real Salvador Mondaca-Vega and could not recall how he came up with the name. He explained that he repeatedly used the name of a non-citizen with authorities because friends told him a U.S. citizen would be detained longer.
The district court found the petitioner had carried his initial burden of proof by offering a U.S. passport and showing that his wife and children had adjusted status and obtained citizenship through him. Mondaca-Vega v. Holder, No. 2:04-ev-00339-FVS, 2011 WL 2746217, at *9 (E.D.Wash. July 14, 2011). The court then shifted the burden to the government to rebut the petitioner’s claim of citizenship by “clear and convincing” evidence, and, after hearing the government’s case, found this burden satisfied. Id. at *9-10. This conclusion was based in part on the district judge’s finding that the petitioner’s testimony was not credible. Id. at *7-8, *10.
4. On April 25, 2013, a divided three-judge panel of this Court found no clear error in the district court’s conclusion. Mondaca-Vega v. Holder, 718 F.3d 1075, 1086 (9th Cir.2013). A majority of the non-recused active judges then voted to rehear the case en banc.[5]
II.
The government “bears the ultimate burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence.” Chau v. INS, 247 F.3d 1026, 1029 n. 5 (9th Cir.2001). When, however, the government offers evidence of foreign birth, a “rebuttable presumption of alienage” arises, “shifting the burden to the [alleged citizen] to prove citizenship.” Id. Upon production by a petitioner of “substantial credible evidence” of the citizenship claim, this presumption bursts and the burden shifts back to the government to “prov[e] the respondent removable by clear and convincing evidence.” Ayala-Villanueva v. Holder, 572 F.3d 736, 737 n. 3 (9th Cir.2009); see also Lee Hon Lung v. Dulles, 261 F.2d 719, 724 (9th Cir.1958) (“[W]here one has, over a long period of years, acted in reliance upon a decision ... admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such decision must be established by evidence which is clear, unequivocal, and convincing.”).
III.
To the extent the government contends that the petitioner failed to offer even “substantial credible evidence” of U.S. citizenship, we reject this claim. The petitioner possessed a valid U.S. passport and successfully petitioned for the adjustment of status of his wife and children based on his purported status as a U.S. citizen. This is “substantial credible evidence” of U.S. citizenship. Ayala-Villanueva, 572 F.3d at 737 n. 3.
IV.
At issue, then, is whether the government bore its burden of proving the *420 petitioner’s alienage. Id.; see also Lee Hon Lung, 261 F.2d at 724 (noting that when the burden shifts back to the government, the question is whether sufficient evidence “warrant[s] disregarding]” the petitioner’s proof of citizenship). The threshold issue is whether the district court erred in holding the government to a “clear and convincing” burden of proof. We review the district court’s determination of the appropriate quantum of proof de novo. United States v. Gill, 280 F.3d 923, 930 (9th Cir.2002).
A.
The petitioner correctly notes that our alienage-determination[6] cases often describe the government’s burden as proof by “clear, unequivocal, and convincing” evidence. See, e.g., Lim v. Mitchell, 431 F.2d 197, 199 (9th Cir.1970) (citing Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960), and Knauer v. United States, 328 U.S. 654, 657, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946)); Lee Hon Lung, 261 F.2d at 723 (citing Schneiderman v. United States, 320 U.S. 118, 123, 125, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943), and Baumgartner v. United States, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944)). The petitioner argues that the word “unequivocal” must add some meaning to the words “clear and convincing,” and that “clear, unequivocal, and convincing” thus signifies a higher burden than simply “clear and convincing.”
We disagree. Our task today is not to apply canons of statutory construction; file burden of proof in alienage-determination proceedings is entirely a judicial construct.[7] Cf. Woodby v. INS, 385 U.S. 276, 284, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (“[D]egree of proof ... is the kind of question which has traditionally been left to the judiciary to resolve.... ”). The Supreme Court has repeatedly used the phrases “clear, unequivocal, and convincing” and “clear and convincing” interchangeably. Compare Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240 (describing the burden on the government in denaturalization cases as proof by “clear, unequivocal, and convincing” evidence), with Pullman-Standard v. Swint, 456 U.S. 273, 286 n. 16, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (describing the issue in BaumgaHner as “whether or not the findings of the two lower courts satisfied the clear and convincing standard of proof necessary to sustain a denaturalization decree”). We have repeatedly done the same. See, e.g., United States v. Arango, 670 F.3d 988, 992 (9th Cir.2012); Lopez-Chavez v. INS, 259 F.3d 1176, 1180-81 (9th Cir.2001); United States v. Meza-Soria, 935 F.2d 166, 169 (9th Cir.1991). We therefore cannot mechanistically conclude that the phrase signifies a burden of proof higher than the familiar intermediate standard simply because it contains the additional word “unequivocal.”
B.
We are troubled, moreover, by the possible alternative interpretations of the phrase “clear, unequivocal, and eonvine- *421 ing.” This phrase cannot, as Judge N.R. Smith’s separate opinion contends, plausibly be interpreted to mean “beyond a reasonable doubt.” The Supreme Court surely knows how to use the phrase “beyond a reasonable doubt” when it wants to. In the citizenship context, however, it has never done so. Rather, it has consistently described “clear, unequivocal, and convincing evidence” as the familiar civil intermediate standard. See Woodby, 385 U.S. at 285, 87 S.Ct. 483 (“In denaturalization cases the Court has required the Government to establish its allegations by clear, unequivocal, and convincing evidence.... That standard of proof is no stranger to the civil law.” (footnote omitted)); Schneiderman, 320 U.S. at 125, 63 S.Ct. 1333 (“[A] certificate of citizenship is ... closely analogous to a public grant of land. To set aside such a grant the evidence must be clear, unequivocal, and convincing — it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt.” (citations and internal quotation marks omitted)); cf. California ex rel. Cooper v. Mitchell Bros.’ Santa Ana Theater, 454 U.S. 90, 93, 102 S.Ct. 172, 70 L.Ed.2d 262 (1981) (per curiam) (“[T]he Court has never required the ‘beyond a reasonable doubt’ standard to be applied in a civil case. This unique standard of proof ... is regarded as a critical part of the moral force of the criminal law.” (internal quotation marks omitted)); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 737, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (“Although the [Norris-LaGuardia Act] does not define ‘clear proof,’ ... Congress meant at least to signify a meaning like that commonly accorded such similar phrases as ‘clear, unequivocal, and convincing proof.’ Under this standard, the plaintiff in a civil case is not required to satisfy the criminal standard of reasonable doubt....” (citing Schneiderman, 320 U.S. at 125, 63 S.Ct. 1333)). These cases make plain that the phrase “clear, unequivocal, and convincing” is simply one of the many articulations of the intermediate burden of proof, not a counterintuitive way to say “beyond a reasonable doubt.”[8] Cf. Meza-Soria, 935 F.2d at 169 (concluding that a determination of alienage by “clear, unequivocal, and convincing evidence” in deportation proceedings could not have collateral estoppel effect in criminal reentry prosecutions because that burden “is not the same as proof beyond a reasonable doubt”).
Equally implausible is the notion that “clear, unequivocal, and convincing” signifies a fourth burden of proof — something between clear and convincing evidence and *422 proof beyond a reasonable doubt. The Supreme Court has repeatedly emphasized that there are three burdens of proof, and expressly noted that the word “unequivocal” is among the many adjectives used to describe the intermediate burden. See Cooper, 454 U.S. at 93, 102 S.Ct. 172 (“Three standards of proof are generally recognized, ranging from the ‘preponderance of the evidence’ standard employed in most civil cases, to the ‘clear and convincing’ standard reserved to protect particularly important interests in a limited number of civil cases, to the requirement that-guilt be proved ‘beyond a reasonable doubt’ in a criminal prosecution.” (footnote omitted)); Addington v. Texas, 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (“The intermediate standard ... usually employs some combination of the words ‘clear,’ ‘cogent,’ ‘unequivocal,’ and ‘convincing’.... ”). Three is enough. It defies reason to think that a fourth burden of proof could be meaningfully distinguished and distinctly applied. See Addington, 441 U.S. at 424, 99 S.Ct. 1804 (“[E]fforts to analyze ... the differences among [burdens of proof] ... may well be largely an academic exercise.... ”); 2 McCormick on Evidence § 340 (listing adjectives used to describe the intermediate burden and stating that “[n]o high degree of precision can be attained by” them). We have never saddled district courts with the hair-splitting exercise of discerning a burden located in between clear and convincing evidence and proof beyond a reasonable doubt, and we decline the invitation to do so now.
To be sure, standards of proof serve a symbolic function. See Addington, 441 U.S. at 425, 99 S.Ct. 1804 (“In cases involving individual rights, whether criminal or civil, the standard of proof at a minimum reflects the value society places on individual liberty.” (alterations and internal quotation marks omitted)). But the intermediate burden of proof requires “an abiding conviction that the truth of [the] factual contentions” at issue is “highly probable.” Colorado v. New Mexico, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984). For this reason, it is appropriately employed when, as here, “particularly important interests” are at stake. Cooper, 454 U.S. at 93, 102 S.Ct. 172; see Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (termination of parental rights); Addington, 441 U.S. at 432-33, 99 S.Ct. 1804 (civil commitment); United States v. Ruiz-Gax-iola, 623 F.3d 684, 692 (9th Cir.2010) (forcible medication of non-dangerous detainees). The symbolic value of the intermediate standard matches the gravity of the task in these proceedings. It is not necessary to create, out of whole cloth, a nebulous fourth burden to recognize that an alienage determination implicates important rights. We therefore conclude that the district court did not err in its articulation of the government’s burden of proof.
V.
Because we find no error in the district court’s use of the intermediate burden of proof, we must next determine the standard of review applicable to the district court’s finding that this burden was satisfied. The petitioner argues that, notwithstanding the factual nature of the district court’s findings, our review is independent — i.e., that this Court reviews the trial judge’s factual determinations without deference and independently determines what the evidence below establishes. Again, we disagree.
A.
Federal Rule of Civil Procedure 52(a)(6) provides in plain terms that district court *423 “[findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous.” The petitioner argues that because the Supreme Court has created an exception to “clear error” review for “ultimate” findings of fact in denaturalization proceedings, the same standard should govern our review here.
B.
Baumgartner was the first case to expressly articulate the principle of independent review in denaturalization cases. The question was whether evidence purporting to show Baumgartner’s loyalty to the Third Reich supported a finding that he had obtained his naturalization decree by fraud. 322 U.S. at 666, 64 S.Ct. 1240. The Court held that the evidence did not support a finding of fraud, and, in so doing, set aside the findings of the district court. Id. at 670-71, 677-78, 64 S.Ct. 1240. The opinion acknowledged the usual rule of deference to trial court factfinding, but found that the rule did not apply to “the conclusion that may appropriately be drawn from the whole mass of evidence,” which, although technically a finding of fact, implicated “broadly social judgments' — judgments lying close to opinion regarding the whole nature of our Government and the duties and immunities of citizenship.” Id. at 671, 64 S.Ct. 1240.
Subsequent denaturalization cases underscored that independent review was motivated by concern about the risk of political persecution uniquely present in the denaturalization context. Thus, in Knauer — which involved the validity of an oath of allegiance — the Court explained that without independent review of lower court findings, “valuable rights would rest upon a slender reed, and the security of the status of our naturalized citizens might depend in considerable degree upon the political temper of majority thought and the stresses of the times.” 328 U.S. at 658-59, 66 S.Ct. 1304 (quoting Schneiderman, 320 U.S. at 159, 63 S.Ct. 1333).
First Amendment concerns are also prevalent in the denaturalization cases. In Nowak v. United States, for example, the government sought to prove that the petitioner “was not ‘attached’ to the principles of the Constitution by showing that he has been a member of the Communist Party with knowledge that the Party advocated the overthrow of the Government by force and violence.” 356 U.S. 660, 665, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958). The Court applied independent review and set aside a denaturalization decree, emphasizing that party membership and “expression of opinions or predictions about future events” was not enough, under its seditious-speech jurisprudence, to show advocacy of violent overthrow. Id. at 663-68, 78 S.Ct. 955 (citing Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled by Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951)).
Because the denaturalization cases often pose First Amendment concerns, they have naturally been linked with the Supreme Court’s First Amendment jurisprudence. See, e.g., Schneiderman, 320 U.S. at 119, 63 S.Ct. 1333 (“We brought this [denaturalization] case here on certiorari because of its importance and its possible relation to freedom of thought.” (citation omitted)). In the First Amendment context, independent review is also sometimes applied. See Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 505-08, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (noting that the Court has independently reviewed factual records in First Amendment cases involving fighting words, incitement to imminent lawless action, obscenity, and defamation). Independent review *424 in this context protects not only a litigant’s First Amendment rights, but also facilitates the appellate courts’ “role in marking out the limits of the [constitutional] standard through the process of case-by-case adjudication.” Id. at 503, 104 S.Ct. 1949. Thus, appellate courts “eonduct[ ] an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confíne the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.” Id. at 505, 104 S.Ct. 1949; see also Knauer, 328 U.S. at 659-60, 66 S.Ct. 1304 (emphasizing the blurred line between facts and law in determinations of loyalty and fraud); Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240 (noting the “so-called ultimate ‘facts’ ” under review “clearly implie[d] the application of standards of law”).
The Supreme Court, however, has never extended independent review to alienage determinations. And, as this case demonstrates, the Court’s reasoning for applying independent review in denaturalization cases does not apply here.
The question for the district court was straightforward: Who is the petitioner? Is he Reynaldo Mondaca Carlon, a native and citizen of the United States, or Salvador Mondaca-Vega, a native and citizen of Mexico? Nothing about this determination implicates “broadly social judgments” or opinions “regarding the whole nature of our Government and the duties and immunities of citizenship.” Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240; see also Chaunt, 364 U.S. at 353, 81 S.Ct. 147. Nor does it implicate free-speech or political-persecution concerns. See Knauer, 328 U.S. at 658-60, 66 S.Ct. 1304; Schneiderman, 320 U.S. at 119, 63 S.Ct. 1333. And, most importantly, there were no questions of law-nor mixed questions of law and fact, nor questions that could conceivably bear on the future definition of a legal right-before the district court. See Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240. Under § 1252(b)(5)(B), we refer proceedings to the district court for the sole purpose of resolving a “genuine issue of material fact.” 8 U.S.C. § 1252(b)(5)(B); see, e.g., Anderson v. Holder, 673 F.3d 1089, 1093, 1097 (9th Cir.2012) (alienage-determination proceedings involving question of whether petitioner’s “paternity was established by legitimation before he turned twenty-one”); Ayala-Villanueva, 572 F.3d at 739-40 (alienage-determination proceedings involving identity of petitioner’s father); Chau, 247 F.3d at 1030 (alienage-determination proceedings involving identity of petitioner’s father and satisfaction of residency requirements). The petitioner is either Reynaldo or Salvador, and the entirely fact-bound answer to this question has no implications for future cases. See Bose, 466 U.S. at 503-06, 104 S.Ct. 1949. Independent review therefore has no role to play in these proceedings.
C.
The petitioner urges that we follow Lim, an alienage-determination case applying independent review to findings of fact. 431 F.2d at 199-200. Lim derived this independent review principle by unelabo-rated analogy to the Supreme Court’s de-naturalization jurisprudence. Id. at 199. If Lim is good law, it indeed controls the outcome here. But, for the reasons explained above, we conclude that the analogy to the denaturalization cases does not withstand critical scrutiny.
Moreover, in the years since Lim, the Supreme Court has questioned whether there can ever be independent appellate review of a question of fact. In Pullman-Standard, the Court reversed the Fifth Circuit for independently reviewing a find *425 ing of intentional discrimination in a Title VII case. 456 U.S. at 285-90, 102 S.Ct. 1781. In doing so, the Court emphasized that the “clearly erroneous” standard of Federal Rule of Civil Procedure 52(a) “does not make exceptions or purport to exclude certain categories of factual findings,” and, “in particular, it does not divide findings of fact into those that deal with ‘ultimate’ and those that deal with ‘subsidiary’ facts.” Id. at 287, 102 S.Ct. 1781; see also Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (reemphasizing that Rule 52(a) has no exceptions). And, just last term, the Supreme Court reversed the Federal Circuit for failing to apply dear-error review to factual findings underlying the construction of a patent claim. Teva Pharm. USA Inc. v. Sandoz, Inc., — U.S. -, 135 S.Ct. 831, 836-39, — L.Ed.2d -(2015). The Court held that although the scope of a patent claim is a question of law, underlying evidentiary determinations are nevertheless questions of fact and therefore subject to clear-error review under Rule 52(a), which applies to all factual findings without exception. Id.
Under these cases, the relevant distinction for standard-of-review purposes is no longer between primary and ultimate facts, but facts and law. See Pullman-Standard, 456 U.S. at 286 n. 16, 102 S.Ct. 1781 (“Whatever Baumgartner may have meant ... [, its] discussion of ‘ultimate facts’ referred not to pure findings of fact ... but to findings that clearly imply the application of standards of law.” (alteration and internal quotation marks omitted)). To be sure, the law-fact distinction is often “vexing.” Id. at 288, 102 S.Ct. 1781. But not today. There are no mixed questions of law and fact nor standards that require development “through the process of case-by-case adjudication” that, could blur the dividing line in this case. Bose, 466 U.S. at 503, 104 S.Ct. 1949. Here, as in Lim, only historical facts need be determined. See Lim, 431 F.2d at 199-204. Lim’s independent-review principle .therefore has no continued vitality.[9]
D.
In urging independent review, the petitioner also emphasizes the severity of the deprivation at stake. We do not minimize the point. The value of citizenship is well acknowledged in the case law. See, e.g., Fedorenko v. United States, 449 U.S. 490, 505-06, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981); Baumgartner, 322 U.S. at 671, 673, 64 S.Ct. 1240. And, the petitioner arguably stands to lose just as much from a determination that he is not a citizen as a naturalized citizen does from a denatural-ization decree.[10]
But the value of citizenship and the hardship of deportation are not the only, or even the primary, factors that motivated independent review in the denaturalization cases. Nor could they be. We review findings of lower courts with deference in a broad array of settings that implicate precious rights and severe deprivations. *426 We even apply the deferential Jackson[11] standard in reviewing the sufficiency of the evidence supporting convictions in death penalty cases. See Davis v. Woodford, 384 F.3d 628, 639-41 (9th Cir.2004) (as amended). Indeed, in deportation proceedings, where “[t]he immediate hardship ... is often greater than that inflicted by denaturalization,” Woodby, 385 U.S. at 286, 87 S.Ct. 483, we nevertheless review agency factfinding with deference, see 8 U.S.C. § 1252(b)(4)(B) (“[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary....”). No greater scrutiny should apply to the factual findings of an Article III judge in alien-age determinations.
E.
For these reasons, we conclude that we are required under Rule 52(a) to review the district court’s factual findings — including its ultimate conclusion that the petitioner is not a citizen because he was born in Mexico-for clear error. Under this standard, we must defer to the district court’s findings unless we are “left with the definite and firm conviction that a mistake has been committed.” Anderson, 470 U.S. at 573, 105 S.Ct. 1504 (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). We may not “duplicate the role of the lower court.” Id. Thus, “[i]f the district court’s account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently.” Id. at 573-74, 105 S.Ct. 1504. As long as “there are two permissible views of the evidence, the fact-finder’s choice between them cannot be clearly erroneous.” Id. at 574, 105 S.Ct. 1504.
F.
The following facts are beyond dispute: the petitioner has accepted voluntary departure on multiple occasions, he has been deported under the name Salvador Mondaca-Vega, he signed a sworn statement under the name Salvador Mondaca-Vega, and fingerprints taken for Salvador Mondaca-Vega by the INS match his fingerprints. These facts give rise to a reasonable — if not inevitable — inference that the petitioner is Salvador Mondaca-Vega, born in Mexico.[12] See United States v. Bucher, 375 F.3d 929, 931 (9th Cir.2004) (“[R]easonable inferences from th[e] facts are the province of the trier of fact.”); see also Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504 (explaining that we must defer to the factfinder’s reasonable conclusions that are based on “physical or documentary evidence or inferences from other facts”).
To be sure, there is evidence to the contrary. The petitioner’s wife and one of *427 his daughters attested that he is Reynaldo Mondaca Carlon, a U.S. citizen. And the petitioner testified that although he has used various aliases, Reynaldo Mondaca Carlon is his true name and identity, that he began to use the name Salvador Mon-daca-Vega with authorities because he believed he would be released from detention faster as a Mexican citizen,[13] and that he continued to use the name because the authorities already knew him as Salvador.
Acting as the finder of fact, however, the district court was entitled to discount this evidence. Much of it turned on credibility. See Allen v. Iranon, 283 F.3d 1070, 1078 n. 8 (9th Cir.2002) (citing Anderson, 470 U.S. at 573, 105 S.Ct. 1504) (noting the “special deference” due to credibility determinations). For example, in her first declaration, the petitioner’s wife referred to Sinaloa, Mexico as “the rancho of [the petitioner’s] birth.” She later retracted this statement, but the district court was surely entitled to draw an adverse inference from the inconsistency, see Gibbs v. Pierce Cnty. Law Enforcement Support Agency, 785 F.2d 1396, 1402 (9th Cir.1986) (“In cases of conflicting testimony where credibility is necessarily at issue, we must be especially reluctant to set aside the findings of the trial court.” (internal quotation marks omitted)).
The district court also found the petitioner’s testimony inconsistent and implausible. The petitioner claims he received the California birth certificate from his mother in Mexico after being deported in May 1953. The court reasonably noted, however, that it made little sense for the petitioner thereafter to continue to use the name of a non-citizen with immigration authorities, particularly given that he claimed to “always” carry the birth certificate with him. The petitioner’s testimony was also inconsistent with his deposition and some of the documentary evidence. See Mondaca-Vega, 2011 WL 2746217, at *5-6 (noting discrepancies); cf Masayesva v. Zah, 65 F.3d 1445, 1457 (9th Cir.1995) (“The court found some of the testimony implausible or contradictory. There was no clear error.”).
There are some minor errors in the district court’s factfinding. For example, the government admits that the petitioner was not removed in July or September of 1951 or November of 1952, as the district court had concluded. But this error is inconsequential in light of undisputed evidence showing that the petitioner has indeed been removed under the name Salvador Mondaca-Vega on other occasions. The district court also incorrectly believed that the petitioner would have had to show a birth certificate in order to obtain a social security number. There was no evidence to this effect in the record, and no stated basis for judicial notice of this fact. But it is hardly conceivable that absent this mistake, the district court would have reached a different conclusion, given the ample other reasons to doubt the petitioner’s credibility.[14]
Finally, the petitioner emphasizes the various occasions on which the government appears to have accepted that he is a *428 citizen — directly, by issuing him passports and adjusting the status of his family members, and indirectly, by charging him with a crime as a citizen or conducting investigations into his citizenship status that terminated favorably or inconclusively. These facts should weigh in the petitioner’s favor before the finder of fact. Ultimately, however, the petitioner’s position is simply that the evidence could plausibly be read as supporting his claim that he was born in this country. But the district judge found to the contrary, and the clear error standard “does not vest[ ] us with power to reweigh the evidence presented at trial in an attempt to assess which items should and which should not have been accorded credibility.” Cata-phote Corp. v. De Soto Chem. Coatings, Inc., 356 F.2d 24, 26 (9th Cir.1966).
Based “on the entire evidence,” we are not “left with the definite and firm conviction that a mistake has been committed.” Anderson, 470 U.S. at 573, 105 S.Ct. 1504 (quoting U.S. Gypsum, 333 U.S. at 395, 68 S.Ct. 525). That ends the analysis; we are not entitled to reject the district court’s findings of fact because, on a cold record, we would have come out differently or because we weigh the equities in the petitioner’s favor. We are therefore constrained to deny the petition for review.
VI.
The petition for review is DENIED.

. Because the core question in these proceedings is one of identity, we refer to the petitioner by that title rather than as Reynaldo Mon-daca Carlon, his asserted name, or Salvador *417 Mondaca-Vega, the name the district court found to be his true name.

. The petitioner claims his true first name is Reynaldo, not Renoldo, and that the birth certificate misspells his name.

. Between 1969 and 1994, the petitioner was charged with numerous offenses under the name Reynaldo Mondaca Carlon and variations thereof. On at least one occasion, he was charged as a U.S. citizen.

. At the time, this provision was codified at 8 U.S.C. § 1105a(a)(5) (repealed 1996).

. After hearing argument on March 17, 2014, the en banc panel vacated submission and referred the case to mediation. The case was resubmitted on February 3, 2015, after mediation efforts failed.

. We use the term "alienage determination” to refer to adjudications made pursuant to 8 U.S.C. § 1252(b)(5)(B) and 8 U.S.C. § 1503(a).

. Although Congress has provided for varying burdens of proof within the Immigration and Nationality Act, it has not specifically addressed the burden in § 1252(b)(5)(B) proceedings. Notably, in 8 U.S.C. § 1229a(c)(3)(A), Congress required the government to establish deportability by "clear and convincing” evidence. The relevant regulation, on the other hand, requires that de-portability be proved by "clear, unequivocal, and convincing” evidence. 8 C.F.R. § 1240.46(a).

. Judge Smith relies on a statement in Ad-dington v. Texas that "[t]he term ‘unequivocal,’ taken by itself, means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases.” 441 U.S. 418, 432, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (emphasis added) (footnote omitted); see also Ward v. Holder, 733 F.3d 601, 605 (6th Cir.2013) (relying on Addington for the proposition that ‘‘[t]he 'clear, unequivocal, and convincing standard’ is a more demanding degree of proof than the ‘clear and convincing' standard”). But Addington also clarifies that the word “unequivocal,” when used together with words such as “clear” and “convincing,” simply refers to the intermediate standard. 441 U.S. at 424, 99 S.Ct. 1804; see also Cooper, 454 U.S. at 93, 102 S.Ct. 172 (distinguishing the burden applied in the deportation and denaturalization contexts from proof beyond a reasonable doubt). Other isolated statements by individual Justices in non-majority opinions suggesting "clear, unequivocal, and convincing” may "approximate!]” or be "substantially identical” to proof beyond a reasonable doubt, see Klapprott v. United States, 335 U.S. 601, 612, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (opinion of Black, J.); id. at 617, 69 S.Ct. 384 (Rutledge, J., concurring); Kungys v. United States, 485 U.S. 759, 795, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (Stevens, J., concurring in the judgment), have “never commanded a majority of the Court,” Meza-Soria, 935 F.2d at 169.

. The panel majority in this case concluded that Pullman-Standard and Anderson had also repudiated the independent review principle in the Baumgartner line of cases. 718 F.3d at 1080. Although there is some force in that reasoning, today we need only conclude that Lim has been overruled, leaving the Supreme Court to decide whether it has also implicitly repudiated its own decisions. See United States v. Easterday, 564 F.3d 1004, 1010 (9th Cir.2009) (as amended); Miller v. Gammie, 335 F.3d 889, 899 (9th Cir.2003) (en banc).

. At oral argument, the government admirably and unequivocally represented that it has "no interest in challenging the [status of the petitioner’s] children.” Accordingly, the only legal interests at stake in this case are the petitioner’s.

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. Although the petitioner admits he used the name Salvador Mondaca-Vega, he argues there is insufficient evidence linking him to the Salvador Mondaca-Vega born in Sinaloa, Mexico on June 3, 1931. He emphasizes that he gave the wrong birth date for this individual when he signed a sworn statement attesting that he is Salvador Mondaca-Vega. At his deposition, however, when asked why he used the name Salvador Mondaca-Vega, the petitioner testified that "[i]t just came to my mind to use that name” and that he had "never heard that name before.” Perhaps it was merely a coincidence that the petitioner, when selecting an alias, chose the exact name and year of birth of an individual with an authentic Mexican birth certificate. But the district court was entitled to conclude otherwise. See Mondaca-Vega, 2011 WL 2746217, at *8 (addressing the inconsistent dates of birth "in light of the record as a whole").

. He admitted at trial, however, that he continued to use the name Salvador Mondaca-Vega to be released from detention even after he allegedly had documentary proof of citizenship.

. Other errors asserted by the petitioner are not errors — and, in any event, are of no consequence to the ultimate determination. For example, the petitioner argues the district court improperly concluded that he was deported as Salvador Mondaca-Vega in July of 1953. The petitioner had been referred to the INS at this time, and a reasonable inference is that he was also deported, given that he had been deported before.