**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| VICTOR MEZA-CARMONA, | No. 20-73293 |
| *Petitioner*, | Agency No. A038-002-055 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 19, 2024
San Francisco, California

Filed August 26, 2024

Before:  Milan D. Smith, Jr., Mark J. Bennett, and Anthony
D. Johnstone, Circuit Judges.

Opinion by Judge Johnstone

## SUMMARY[*]

### Immigration

After transfer of this matter to the District of Arizona to resolve factual disputes concerning petitioner Victor Meza-Carmona's citizenship claim, the panel held that the district court did not clearly err in determining that Meza-Carmona failed to prove that he is a United States citizen, and denied his petition for review of an order of the Board of Immigration Appeals.

Meza-Carmona was born in Mexico to Victoria, a U.S. citizen. Under 8 U.S.C. § 1409(c) (1952), Victoria transmitted U.S. citizenship to him only if she was "physically present in the United States . . . for a continuous period of one year" some time before his birth.

The panel held that § 1409(c) requires a person claiming citizenship to show that the person's mother stayed in the United States for one year without leaving. The panel applied the presumption of consistent usage, explaining that nothing in the statutory context suggests that the phrasing means anything different here than it did when the Supreme Court interpreted it in a different immigration provision.

The panel concluded that the district court did not clearly err in finding that Meza-Carmona failed to establish Victoria's continuous presence. Based on the record, the district court could infer either that Victoria stayed continuously in the United States, or that she did

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not. Because the record supported either inference, the panel could not say that the district court's conclusion was clear error.

## COUNSEL

Taylor N. Renfro (argued) and Hillary G. Walsh, New Frontier Immigration Law, Phoenix, Arizona, for Petitioner.

Robert D. Tennyson, Jr., (argued), Trial Attorney; Nancy Friedman, Senior Litigation Counsel; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

JOHNSTONE, Circuit Judge:

Victor Meza-Carmona petitions for review of an order of removal, claiming that he is a U.S. citizen. Meza-Carmona was born in Mexico in 1968 to Victoria Carmona Meza, a U.S. citizen. Although Victoria was born in the United States, at a young age, she moved to Mexico, where she resided for many years. At the time of Meza-Carmona's birth, Victoria was not yet married to Meza-Carmona's father, a Mexican citizen. Under the law applicable to these circumstances, Victoria transmitted U.S. citizenship to her son only if she was "physically present in the United States . . . for a continuous period of one year" some time before his birth. 8 U.S.C. § 1409(c) (1952). This case turns on the meaning of this requirement and whether Meza-Carmona

has shown that Victoria satisfied it. We transferred this case to the District of Arizona to resolve factual disputes regarding Meza-Carmona's citizenship claim. 8 U.S.C. § 1252(b)(5). Because the district court did not clearly err in determining that Meza-Carmona failed to prove that he is a U.S. citizen, we deny the petition.

## I.   Background

Victoria was born in Los Angeles, California, on August 21, 1947. Eleven months later, on July 11, 1948, Victoria was baptized in El Paso, Texas. At some point after Victoria's baptism, her godmother, Leonilla Carmona de Cedillo, took custody of her. Victoria resided with Cedillo in El Paso for approximately two years. While Victoria was in her care, Cedillo, a Mexican citizen and lawful permanent resident of the United States, renewed border crossing cards every six months. These cards authorized Cedillo to freely reenter the United States from Mexico.

At some point before Victoria began school, she moved to Ciudad Juarez, Mexico, where her paternal grandparents raised her. Victoria eventually began a relationship with a Mexican citizen, Francisco Meza. Meza-Carmona was born to the couple on August 5, 1968, in Ciudad Juarez. Victoria and Francisco later married. When Meza-Carmona was five years old, the family moved to Arizona.

In 1975, Victoria filed a citizenship application on Meza-Carmona's behalf, claiming that he acquired citizenship at birth. The record supporting the application is not clear. According to a contemporaneous summary by the Immigration and Naturalization Service ("INS"), Victoria testified that she moved to live with her grandparents in Mexico "when she was a few months of age." The summary states that Victoria "acknowledge[d] that she never had the

one year continuous physical presence in the US." The INS denied the application because the application failed to establish that Victoria had continuously resided in the United States for at least one year before Meza-Carmona's birth. After the denial, the family submitted an affidavit from Cedillo. She stated that Victoria "lived with [her] approximately two years" in El Paso, Texas, but did not address whether Cedillo and Victoria traveled to Mexico during this time.

Meza-Carmona later received lawful permanent resident status. After convictions for theft and aggravated assault, he was ordered deported in 1988. *See* 8 U.S.C. § 1251(a)(4) (1981). He reentered the United States at an unknown date. In 2012, the Department of Homeland Security ("DHS") initiated removal proceedings against Meza-Carmona. He unsuccessfully asserted that he had acquired U.S. citizenship through his mother under 8 U.S.C. § 1409(c) (1952). After an immigration judge ordered Meza-Carmona removed, he appealed to the Board of Immigration Appeals. The Board of Immigration Appeals dismissed his appeal, and Meza-Carmona timely petitioned for review.

We transferred the case to the District of Arizona under 8 U.S.C. § 1252(b)(5) to resolve factual disputes concerning Meza-Carmona's citizenship claim. By agreement of the parties, the district court resolved Meza-Carmona's citizenship claim without a hearing. The district court found that Meza-Carmona failed to prove that he was a citizen by a preponderance of the evidence. *See* Fed. R. Civ. P. 52(a)(1) (authorizing a district court to enter factual findings). The case then returned to this Court for review of the district court's decision. *See Giha v. Garland*, 12 F.4th 922, 928 (9th Cir. 2021). We review legal conclusions de novo. *Minasyan v. Gonzales*, 401 F.3d 1069, 1074 (9th Cir. 2005). We review

factual findings, including the ultimate determination as to whether a person is a citizen, for clear error. *Mondaca-Vega v. Lynch*, 808 F.3d 413, 417, 426 (9th Cir. 2015) (en banc).

## II. Meza-Carmona failed to meet his burden of proof.

The Government "bears the ultimate burden of establishing all facts supporting [removability] by clear, unequivocal, and convincing evidence." *Mondaca-Vega*, 808 F.3d at 419 (quoting *Chau v. INS*, 247 F.3d 1026, 1029 n.5 (9th Cir. 2001)). We apply a three-part burden-shifting framework to citizenship claims in removal proceedings. First, the Government must prove foreign birth by clear and convincing evidence. *Id.* Second, if the Government meets its burden at step one, the person claiming citizenship must prove their citizenship by a preponderance of the evidence. *See Giha*, 12 F.4th at 930. Third, if the person meets their burden at step two, "the burden shifts back to the [G]overnment to 'prov[e] the respondent removable by clear and convincing evidence.'" *Mondaca-Vega*, 808 F.3d at 419 (second alteration in original) (quoting *Ayala-Villanueva v. Holder*, 572 F.3d 736, 737 n.3 (9th Cir. 2009)). Here, we must consider whether Meza-Carmona has met his burden at the second step.

### A. Section § 1409(c) requires continuous physical presence.

Meza-Carmona claims that he acquired citizenship from his mother pursuant to § 1409(c). His claim depends "on the statute that was in effect 'at the time the critical events giving rise to eligibility occurred.'" *Giha*, 12 F.4th at 932 (quoting *Minasyan*, 401 F.3d at 1075). Here, the critical event is Meza-Carmona's birth in 1968. *See Chau*, 247 F.3d at 1028 n.3. Then, as now, § 1409(c) provided that "a person born . . . outside the United States and out of wedlock"

would take his mother's United States citizenship if she were a citizen at the time of her child's birth and "if [she] had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year." 8 U.S.C. § 1409(c) (1952).[1] This case requires us to decide what a person must prove to establish continuous physical presence.

We hold that to meet the requirement of being "physically present in the United States . . . for a continuous period of one year," a person claiming citizenship must show that the person's mother stayed in the United States, without leaving, throughout that period. Under the presumption of consistent usage, "a word or phrase is presumed to bear the same meaning throughout a text." *United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (quoting Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012)); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). Here, Congress used the same phrasing in another provision of the Immigration and Nationality Act of 1952, Pub. L. No. 82-414, §§ 244(a)(1), 309(c), 66 Stat. 163, 214, 238–39 (1952). The Supreme Court interpreted that phrasing to require noncitizens to show that they stayed in the United States for a period of seven years without leaving. *See INS v. Phinpathya*, 464 U.S. 183, 189–92 (1984) (interpreting 8 U.S.C. § 1254(a)(1) (1981)). Here, nothing in the statutory context suggests that the terms "physically present" and "continuous period" mean anything different in § 1409(c) than they did in § 1254(a)(1). *Cf. Return Mail, Inc. v. U.S.*

---

[1] In *Sessions v. Morales-Santana*, the Supreme Court held that § 1409(c) violated the equal protection principles implicit in the Fifth Amendment and that the five-year physical-presence requirement in 8 U.S.C. § 1401(g) applies prospectively to claims under § 1409(c) by persons born after its decision. 582 U.S. 47, 51–52, 77 (2017).

*Postal Serv.*, 587 U.S. 618, 629 (2019) (declining to apply the presumption of consistent usage). Therefore, we hold that § 1409(c) requires a person claiming citizenship to show that the person's mother stayed in the United States for one year without leaving the country. We now turn to the application of the one-year requirement in this case.

### B. The district court did not clearly err.

Factual findings by the district court, "whether based on oral or other evidence, must not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a)(6). Factual inferences arising from the evidence are also subject to clear error review. *See Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011). Under the clear error standard, we will reverse factual findings only if "the district court's determination was wrong because it was: (1) illogical, (2) implausible, or (3) 'without support in inferences that may be drawn from the facts in the record.'" *Gov't of Guam v. Guerrero*, 11 F.4th 1052, 1059 (9th Cir. 2021) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). The district court did not clearly err in finding that, on this record, Meza-Carmona failed to meet his burden of establishing his mother's continuous physical presence in the United States for one year at any time prior to his birth.

The evidence before the district court was: Victoria was in Los Angeles, California on August 21, 1947 (the date she was born), and in El Paso, Texas on July 11, 1948 (the date she was baptized); at some time after her baptism, Victoria moved in with Cedillo and lived with her in El Paso for about two years; and, during this period of time, Cedillo regularly renewed border crossing cards that allowed her to reenter the United States from Mexico. There was no other evidence of

whether Victoria traveled to Mexico at a time that would have interrupted her one year of continuous presence in the United States.**[2]** On this record, the district court could draw either of two inferences: (1) Victoria continuously stayed in the United States for at least one year at some point between her birth, baptism, and the two years she resided with Cedillo; or (2) Victoria did not continuously stay in the United States for at least one year because she interrupted that period with one or more visits to Mexico with her parents or Cedillo. Here, the district court adopted the second inference. Because the record may support either inference, we cannot say this is clear error. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Because "the district court's findings are plausible in light of the entire record, we may not reverse, even if we would have weighed the evidence differently." *Lewis v. Ayers*, 681 F.3d 992, 998 (9th Cir. 2012). Meza-Carmona does not otherwise contest that he is subject to removal.

**PETITION DENIED**.

---

[2] The parties also relied on Victoria's 1976 testimony, as well as more her recent statements. The district court rejected all of this testimony on grounds that have not been challenged on appeal. Thus, we assume the district court properly rejected her testimony. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).